UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
CINTHIA CAROLINA REYES ORELLANA and
SAMYA I. MOFTAH, individually and on
behalf of all similarly situated
individuals,                                    **MEMORANDUM AND ORDER**

                    Plaintiffs,                 17 Civ. 5192 (NRB)

        - against -

MACY'S RETAIL HOLDINGS, INC. d/b/a
MACY'S f/k/a MACY'S EAST a/k/a
MACY'S, INC.; LAW OFFICES OF PALMER,
REIFLER and ASSOCIATES, P.A.,

                    Defendants.
----------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Before this Court is plaintiffs' motion for leave to amend
their first amended class action complaint against Macy's Retail
Holdings, Inc. d/b/a Macy's f/k/a Macy's East a/k/a Macy's, Inc.
("Macy's").  As a mercantile establishment, Macy's is authorized
under two separate New York statutory schemes to (1) reasonably
detain suspected shoplifters, and (2) collect civil penalties and
damages therefrom.  Plaintiffs' proposed amended class action
complaint alleges that Macy's has abused and exceeded these
authorizations by implementing them in combination.  According to
plaintiffs, Macy's demands that suspected shoplifters (1) pay, or
agree to pay, civil penalties, and (2) confess to shoplifting,
while they are being detained.  Further, plaintiffs allege that

Macy's falsely promises suspected shoplifters that they will be released if they meet Macy's demands, only to be subsequently arrested at Macy's behest.

Plaintiffs' proposed amended class action complaint asserts a variety of causes of action with respect to this conduct, including false imprisonment, fraud, abuse of process, and consumer deception. As we conclude that several, but not all, of plaintiffs' proposed causes of action state a claim for which relief could be granted, their motion for leave to amend is granted in part and denied in part. However, while the issue of class certification has not been fully briefed, we express concern that, for several reasons, the putative class could not be certified as it is defined in the proposed amended class action complaint.

## BACKGROUND

### I. Factual Background

Plaintiffs' proposed amended class action complaint is most readily understood in the context of the applicable New York statutory law, so we begin our background section with an explanation of those statutes.

#### a. Statutory Scheme

Section 218 of the New York General Business Law ("GBL § 218"), which codifies the common-law "shopkeeper's privilege," provides that "[i]n any action for false arrest, false imprisonment, unlawful detention . . . assault, trespass, or

invasion of civil rights" brought by an individual stopped at a retail establishment for investigation or questioning concerning "ownership of any merchandise[,] . . . it shall be a defense to such action that the person was detained in a reasonable manner and for not more than a reasonable time to permit such investigation or questioning[,]" and that the person detaining the individual "had reasonable grounds to believe that the person so detained was . . . committing or attempting to commit larceny on such premises of such merchandise." N.Y. Gen. Bus. Law § 218.

The purpose of GBL § 218 is "to protect merchants from false arrest suits even where the criminal actions are eventually dismissed," and to help "overcome the extreme reluctance with which merchants . . . attempt to interfere with shop-lifters." Jacques v. Sears, Roebuck & Co., 30 N.Y.2d 466, 472, 285 N.E.2d 871 (1972) (internal quotation marks omitted); see also Guion v. Associated Dry Goods Corp. (Lord & Taylor Div.), 56 A.D.2d 798, 798, 393 N.Y.S.2d 8 (1st Dep't 1977) ("[A]lthough store owners may not proceed with abandon to rectify the problem [of shoplifting], they should not be deterred from attempting to apprehend those responsible for the theft of merchandise."), aff'd, 43 N.Y.2d 876, 374 N.E.2d 364 (1978).

Section 11-105 of the New York General Obligations Law ("GOL § 11-105") provides, in relevant part, that "[a]n adult or emancipated minor who commits larceny against the property of a

mercantile establishment shall be civilly liable to the operator [thereof] in an amount consisting of," (a) "the retail price of the merchandise if not recovered in a merchantable condition," up to $1,500, and (b) "a penalty not to exceeded the greater of five times the retail price of the merchandise," or $75, "provided, however, that in no event shall such penalty exceed" $500. N.Y. Gen. Oblig. Law § 11-105(5), (6). Under the statute, "[t]he fact that an operator of a mercantile establishment may bring an action against an individual as provided in this section shall not limit the right of such merchant to demand, orally or in writing, that a person who is liable for damages and penalties . . . remit the damages and penalties prior to the commencement of any legal action." Id. § 11-105(8).

The Assembly and Senate bill jackets corresponding to GOL § 11-105's enactment announce its purpose as "authoriz[ing] a merchant to institute a civil cause of action for shoplifting violations instead of relying upon a District Attorney to institute a criminal cause of action for petty larceny." N.Y. Bill Jacket, S.B. 3916/A.B. 5783, 189th Leg., 1991 Sess., ch. 724, at 4-5 (1991).

The bill jackets go on to describe GOL § 11-105's intended benefits as follows:

> The store owner will be authorized to recover damages against the shoplifter instead of being forced to raise prices against the public. Therefore, the person

> committing the crime will bear the expense of
> enforcement and litigation as opposed to having the
> public at large pay higher prices for shoplifting losses
> and surveillance expenses.  The criminal courts will be
> relieved of prosecuting these cases.  Further, this
> proposal will allow most cases to be resolved through a
> civil case or [out] of court settlement.  Accordingly,
> teenagers and others who are caught will be allowed to
> resolve their shoplifting infraction without being
> saddled with a criminal record.

Id.; see also id. at 101 (Letter from Hon. Eric N. Vitaliano, The Assembly, State of New York, to Hon. Elizabeth D. Moore, Counsel to the Governor, State of New York (Sept. 3, 1991) (noting that retailers in states that have enacted similar provisions "have not felt compelled to pursue criminal process as the only way to stop the shoplifting crime wave")).

### b. Plaintiffs' Claims and Causes of Action

Plaintiffs seek to represent a putative class of individuals who Macy's detained as suspected shoplifters, pursuant to GBL § 218 and GOL § 11-105, in its New York stores.  Their proposed amended class action complaint describes Macy's "loss prevention" scheme as follows.  Upon suspicion of shoplifting, a Macy's employee approaches a suspect and directs him to an "in-store jail[]" "complete with private search areas, handcuffs, and jail cells with adjoining desks."  Proposed Amended Class Action Complaint ("PAC") ¶ 4, Jan. 8, 2018, ECF No. 28-2.  Upon detention, the employee "perform[s] [a] full-body search[], inspect[s] the contents of the accused shoplifter's wallet, [and] conduct[s an]

interrogation[]." Id. Key to this litigation, the loss
prevention employee also promises the detained shoplifter that he
will be released so long as he (1) completes a "promissory note,"
i.e., a civil demand notice,[1] agreeing to pay, either immediately
or in the future, a civil penalty, and (2) signs a confession.[2] See
id. ¶¶ 2, 4. Yet, according to the proposed amended class action
complaint, contrary to the employee's representation, Macy's
instead calls the police, and the suspect is held until he is
arrested and transferred to police custody, along with a supporting
deposition prepared by a Macy's loss prevention employee.[3] See

---

[1] The "promissory note" to which plaintiffs refer is a one page document
entitled "New York Civil Demand Notice Prosecuted." Declaration of Meir Feder
("Feder Decl.") Ex. A, Feb. 8, 2018, ECF No. 32. The notice, described more
fully below, advises the detained shoplifter of Macy's statutory authority to
collect damages and civil penalties, and asks him to "signify understanding and
agreement" to the damages and penalties applicable in his case. See id. The
civil demand notice, although not attached to plaintiffs' proposed amended class
action complaint, is properly considered on this motion as being repeatedly
referenced in, and integral to, the proposed amended class action complaint.
See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-54 (2d Cir. 2002).

[2] The signed confession, labeled "Statement of admission," is a template
containing a list of the items the detainee allegedly attempted to steal, along
with the following language: "I, [name] living at [address], make this statement
voluntarily and of my own free will and accord, without intimidation by threats
or promises, that on [date], I did take merchandise and/or cash belonging to
Macy's valued at [value], without consent or permission and with the intent to
permanently deprive Macy's of their property." Feder Decl. Ex. M; see Chambers,
282 F.3d at 152-54.

[3] The "supporting deposition" that Macy's loss prevention employees are
alleged to complete and provide to the arresting officers is a one page document
labeled "Shoplifting / Trespass Supporting Deposition." See Feder Decl. Ex. X;
Chambers, 282 F.3d at 152-54. The declarant is instructed to answer all of the
following questions (and certain sub questions): (1) "Did you observe the
defendant remove property?" (2) "Did you observe the defendant conceal
property?" (3) "If you did NOT observe the defendant remove or conceal property,
why was the defendant stopped?" (4) "Did you observe the defendant outside the
store; attempt to leave the store; or walk past more than one open register and

6

id. ¶¶ 2, 8, 29, 36, 54.

The proposed amended class action complaint asserts causes of action against Macy's for (1) false imprisonment, (2) abuse of process, (3) "fraud/unjust enrichment," (4) deceptive business practices in contravention of New York General Business Law § 349 ("GBL § 349"), N.Y. Gen. Bus. Law § 349, (5) "assault/battery," and (6) deprivation of civil rights under 42 U.S.C. § 1983. PAC ¶¶ 71-95. Plaintiffs seek, *inter alia*, a "permanent injunction of in-store demands for immediate payments, signed confessions, and promissory notes from suspected shoplifters in Macy's custody in New York," a refund of all moneys collected in custody, and money damages "to each Plaintiff that was subjected to in-store demands." Id. at 12.

### c. Putative Class and Lead Plaintiffs

Plaintiffs define the class they seek to represent as consisting of "all persons who, while accused of shoplifting and detained by Macy's at their New York department stores, have been or will be subjected to in-store demands for confessions of shoplifting, and demands to pay civil penalties." Id. ¶ 19. There are eleven named plaintiffs whose interactions with Macy's are described below.

―――――――――――――――――

move to another floor in possession of concealed property without paying for it?" (5) "Did you recover the property from the defendant?" and (6) "Is there a prior 'Trespass Notice' showing that the defendant was not permitted to enter the above-named store?" Feder Decl. Ex. X.

Cinthia Carolina Reyes Orellana, a 29 year old native of Honduras, was allegedly detained at Macy's Herald Square location in Manhattan in July 2014, "shortly after she emerged from a dressing room holding a few items of clothing and rode an escalator to another floor." Id. ¶¶ 26-27. Upon detention, Orellana (1) was told "she would be released as soon as [she] signed a paper admitting guilt and agreeing to pay Macy's a penalty equal to five times the price of the merchandise that was found on her," (2) paid $100 in cash, (3) signed a confession and civil demand notice, but (4) was not released, and instead turned over to police custody, supported by a deposition prepared by a Macy's loss prevention employee. Id. ¶¶ 28-29; see Feder Decl. Exs. A, L. The resulting criminal case against her was eventually dismissed. See PAC ¶ 31.

Samya Moftah, a 53 year old native of Egypt, was allegedly detained at Macy's Herald Square location in July 2015, after she was found in possession of previously purchased merchandise. Id. ¶¶ 32-33. Upon detention, and despite protestations of innocence, Moftah (1) was told she would be released as soon as she paid a $500 fine, (2) paid $500 via credit card, (3) signed a confession and civil demand notice, but (4) was not released, and instead turned over to police custody, supported by a deposition prepared by a Macy's loss prevention employee. Id. ¶¶ 35-36; see Feder Decl. Exs. B, M. The resulting criminal case against her was

eventually dismissed.  See PAC ¶ 37.

Deyanira Ramirez, a 61 year old of Columbian descent who speaks "very limited English," was allegedly detained at Macy's Roosevelt Avenue location in Queens in April 2017, "on suspicion of exiting the store without paying for two chemises and two girl's dresses."  Id. ¶ 38.  Upon detention, Ramirez (1) was "ordered to sign some papers in order to be released," (2) signed a confession and civil demand notice, (3) was not released, and instead turned over to police custody, and (4) was told that she owed $500 to Macy's "and that she had to pay the full amount before making a court appearance or that otherwise the Judge would order her to pay three times as much."  Id. ¶¶ 39-41; see Feder Decl. Exs. F, Q.  The resulting criminal case against her was eventually dismissed.  See PAC ¶ 42.

Anthony Perullo, 50 years old, was allegedly detained at Macy's Herald Square location in January 2016 "on suspicion of taking bags of T-shirts, socks and underwear that he did not intend to pay for."  Id. ¶ 43.  Upon detention, Macy's employee Herschel Nurse told Perullo that he would be arrested unless he paid $500 on his Macy's credit card.  See id. ¶ 45.  "However, Nurse's supervisor vetoed the proposal and Perullo," who signed a confession and civil demand notice, "was arrested."  Id.; Feder Decl. Exs. E, O.  The resulting criminal case against him was eventually dismissed.  See PAC ¶ 46.

Dean Melgar, 69 years old, was allegedly detained at Macy's Avenue U location in Brooklyn in October 2013 "on suspicion of possessing several neckties that he did not intend to pay for." Id. ¶ 47. Upon detention, Melgar, "despite vigorous protests that he did not intend to steal the neckties," (1) "was told that if he signed a paper which admitted to 'making a mistake,' and paid [Macy's] $500 with his Macy's credit card, he would be released, and that his money would eventually be refunded after his court appearance," (2) signed a confession and civil demand notice, (3) paid $500, but (4) was arrested. See id. ¶¶ 48-49; Feder Decl. Exs. C, N. The resulting criminal case against him was eventually dismissed, but his money was not refunded. See PAC ¶ 49.

Maria Lema, a 57 year old native of Ecuador, was employed as a custodian at Macy's Fulton Street location in Brooklyn when she was allegedly detained by security manager Chance Linden, in December 2012, "after being observed putting three small, inexpensive items, into her apron pocket." Id. ¶¶ 51-52. Upon detention, Lema (1) was instructed, through an interpreter, that she would be released if she signed a confession to stealing from Macy's, (2) signed a civil demand notice and confession, (3) paid $415, but (4) was arrested "despite her protests that she had been lied to." Id. ¶¶ 52-53; see Feder Decl. Exs. K, V. At her subsequent arraignment, "her prosecutor served a supporting deposition prepared and executed by Mr. Linden, and declared that

the case was ready to proceed to trial."  PAC ¶ 54.

Ann Ratner, 68 years old, was allegedly detained at Macy's Herald Square location in November 2014 after she was found "in possession of a small, costly bottle of perfume." Id. ¶ 55. Upon detention, Ratner (1) was told, "It will be easier for you if you pay us $500 right now," (2) signed a civil demand notice and confession, (3) paid $500 as she "didn't want to rock the boat," and (4) was arrested.  Id. ¶¶ 56-57; see Feder Decl. Exs. D, P. She eventually pleaded guilty to disorderly conduct and was sentenced to conditional discharge.  See PAC ¶ 58.

Shamsun Nahar and her husband, Mohammad Hoque, were allegedly detained in January 2017 after they were observed "placing gloves and jewelry into shopping bags and attempting to leave the store without paying for them." Id. ¶¶ 59-60. Upon separate detention, each (1) was subjected to demands to sign confessions and agree to make $500 payments (and, in Nahar's case, was told "that the penalty would increase if it was not paid before her appearance in Criminal Court"), (2) signed a civil demand notice and confession, and (3) was arrested.  Id. ¶¶ 59, 61-62; see Feder Decl. Exs. G, H, R, S.  Later that same month, Nahar's case was adjourned in contemplation of dismissal, and Hoque pleaded guilty to disorderly conduct and was sentenced to a conditional discharge, a $120 fine, and community service.  See PAC ¶¶ 63-64.

Margarita Acteopan, 36 years old, was allegedly detained at

Macy's Herald Square location in April 2016 "while wearing a blouse and sweater she had tried on."  Id. ¶ 65.  Upon detention, Acteopan, who speaks limited English, was required to sign a civil demand notice and confession.  Id. ¶ 66; see Feder Decl. Exs. I, T.  Upon release, Macy's contacted Acteopan at home, and told her "that if she did not pay Macy's $500, the amount would increase by $500 every week, and that if she didn't pay, they would come to her home and arrest her."  PAC ¶ 67.

Atchade Osongba, 50 years old, was allegedly detained at Macy's Herald Square location in February 2016, "in possession of a suit."  Id. ¶ 68.  Upon detention, Osongba, who does not read English well,  (1) was presented with a civil demand notice and confession, and told that "if he signed he would be let go," but (2) declined to sign, and (3) was arrested.  Id. ¶¶ 69-70; see Feder Decl. Exs. J, U.[4]  His resulting criminal case was eventually dismissed.  PAC ¶ 70.

## II.  Procedural Background

### a. Original State Court Action

Orellana commenced this action by filing a notice and summons in New York State Supreme Court in July 2015.  See ECF No. 1-1. She thereafter filed her class action complaint in November 2015,

---

[4] Osongba's unsigned confession and civil demand notice spell his last name "Assongba."  See Feder Decl. Exs. J, U.

naming as defendants Macy's and the Law Offices of Palmer, Reifler and Associates, P.A. ("Palmer"). See Compl. at 1, ECF No. 1-2. Orellana initially asserted causes of action for "false imprisonment/arrest" and unjust enrichment against both defendants, and abuse of process and "assault/battery" against Macy's alone. See id. ¶¶ 144-60. The complaint also sought a declaration that GOL § 11-105 was "void for vagueness" under the New York State and Federal Constitutions.[5] See id. ¶¶ 161-62.

Macy's moved to dismiss the class action complaint, which the Supreme Court in a June 2016 Order denied in all but one respect; Orellana's claim challenging the constitutionality of GOL § 11-105 was "severed and dismissed." See Order at 3-4, Orellana v. Macy's Retail Holdings, Inc., No. 453060/2015 (N.Y. Sup. Ct. June 24, 2016), ECF No. 1-7. The Supreme Court concluded that "the plain language of GOL § 11-105" is not "vague and is valid on its face, and does not violate an individual's rights who is subject to the penalties enumerated therein." Id. at 4.

Although finding the statute constitutional, the Supreme Court two weeks later granted Orellana's motion to preliminarily

---

[5] The initial class action complaint alleged that Orellana sought to "represent a certified . . . class consisting of": (1) "All Macy's customers residing within the NY State who were detained by Macy's loss prevention employees and subsequently have paid monetary civil penalties either directly to defendant Macy's, and/or to defendant Palmer upon receiving a demand letter from Palmer[;]" and (2) "All Macy's customers residing within the NY State who were detained by Macy's loss prevention employees in an unreasonable time and manner in violation of GBL § 218." Compl. ¶ 12.

enjoin Macy's from "demanding, requesting, collecting, receiving, or accepting any payments in connection with GOL § 11-105, from suspected shoplifters while they are detained under Macy's custody pursuant to GBL § 218." Orellana v. Macy's Retail Holdings, Inc., 36 N.Y.S.3d 547, 556 (Sup. Ct. 2016).

The Supreme Court explained that Macy's is "empowered" to use GBL § 218 and GOL § 11-105 "as a shield, and as a form of protection of its establishment and merchandise." Id. at 549-50. However, Macy's had "taken the authority granted to it under GBL § 218 to detain an individual for shoplifting, and ha[d] combined that with the authority it is given under GOL § 11-105 to collect civil penalties from an individual suspected of shoplifting. These statutes as allegedly applied by [Macy we]re being used as a double edged sword, instead of a shield." Id. at 552. "It appears that Macy's is detaining, investigating, eliciting a confession and recovering civil penalties at the time the suspected shoplifter is in Macy's custody, and then instead of releasing the individual, continuing to detain them and pursue criminal punishment." Id. at 553. The Supreme Court expressed particular concern that, under Macy's exercise of GBL § 218 and GOL § 11-105, "[a] suspected shoplifter is given no opportunity to otherwise object, have a hearing, or receive guidance from counsel before signing a confession to shoplifting, and/or agreeing to pay civil penalties because the civil penalties are being demanded at the time the

individual is under detention by Macy's." Id. at 552-53. "This is not what is contemplated under the statute and these actions by Macy's, a private actor, go beyond what the legislature envisioned when it enacted GBL § 218 and GOL § 11-105." Id. at 553.

Accordingly, Macy's was "enjoined from demanding confessions and payments while the [suspected shoplifter] is under detention" but not from "proceeding to demand payment through a collection effort by its attorneys, or through a civil action, after the suspected shoplifter has been released."[6] Id. at 554-55.

### b. First Amended Class Action Complaint and Removal

In September 2016, having received leave to do so, see id. at 555, plaintiffs filed their first amended class action complaint, which (1) added a new lead plaintiff, Moftah, (2) asserted a new cause of action against both Macy's and Palmer for "deprivation of civil rights" under 42 U.S.C. § 1983, and (3) modified the definition of the putative class.[7] See Amended Complaint ("Am.

---

[6] The Orellana court described the scope of the injunction differently throughout the opinion. While it consistently held that Macy's was enjoined from "demanding payment of civil penalties while a suspected shoplifter is detained in Macy's custody," see, e.g., 36 N.Y.S.3d at 556, it was inconsistent as to whether Macy's was also prevented from demanding that suspected shoplifters sign confessions while detained, compare id., with id. at 554.

[7] Orellana and Moftah's first amended complaint outlined "a certified class consisting of": "Class 1: All individuals whom defendants detained, arrested, imprisoned, threatened with prolonged detention, arrest, imprisonment, and/or criminal prosecution, promised immediate release from such detention, arrest, or imprisonment, or placed under any kind of duress or coercion and who subsequently paid or agreed to pay penalties to defendants in connection with GOL [§] 11-105 [along with a]ll individuals who paid or agreed to pay penalties to defendants in connection with GOL [§] 11-105 while such individuals were confined in holding cells against their will under threat of

Compl."), ECF No. 1-3.  While Macy's answered the amended class action complaint, Palmer moved to dismiss the claims against it, which the Supreme Court granted with respect to the false imprisonment and unjust enrichment claims, but not § 1983 claim. See Order, <u>Orellana v. Macy's Retail Holdings, Inc.</u>, No. 453060/2015 (N.Y. Sup. Ct. Mar. 29, 2017), ECF No. 1-10.  Soon thereafter, plaintiffs filed a motion for nationwide class certification,[8] after which Macy's removed the action to this Court pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  <u>See</u> ECF No. 1.

### c. The Instant Motion

Now pending is plaintiffs' motion, pursuant to Federal Rules of Civil Procedure 15(a), 20(a)(1), 21, and 81(c)(2),[9] to amend their operative first amended class action complaint to (1) add

———————————

prolonged detention or imminent criminal prosecution;" and "Class 2: All individuals whom defendants falsely apprehended, detained, or imprisoned in an unreasonable time and manner in violation of GBL § 218."  Am. Compl. ¶ 13.

[8] Plaintiffs' class certification motion sought to certify two "nationwide classes": (1) "All individuals who, while detained by Defendant Macy's, have been coerced into signing confessions and promises to make payments of civil penalties to Defendants.  The class includes Plaintiffs and all individuals who paid civil penalties to Defendant Macy's in connection with GOL [§] 11-105 while being held in Macy's detention, and those individuals who paid civil penalties after being released from Macy's detention upon signing a Statement of Admission and/or Civil Demand Notice while being held in Macy's detention;" and (2) "All individuals who are ultimately not found to be in possession of any unpaid-for Macy's merchandise that the individual intended to steal, or in possession of any fraudulently purchased Macy's merchandise."  Pl.'s Class Cert. Mot. 13, June 20, 2017, ECF No. 1-4.

[9] It is unclear why plaintiffs have moved pursuant to Federal Rule of Civil Procedure 81(c)(2), which simply provides that "[a]fter removal, repleading is unnecessary unless the court orders it."  Fed. R. Civ. P. 81(c)(2).

nine new lead plaintiffs (Ramirez, Perullo, Melgar, Lema, Ratner, Nahar, Hoque, Acteopan, and Osongba), (2) withdraw all claims against Palmer, (3) assert new causes of action against Macy's for fraud and deceptive business practices under GBL § 349, (4) modify the pre-existing causes of action, and (5) redefine the contours of the class.[10]

**DISCUSSION**

### I.   Standard of Review

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend shall be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2).  Whether to grant leave, however, is ultimately "within the sound discretion of the district court." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citing Zahra v. Town of Southold, 48 F.3d 674, 686 (2d Cir. 1995)).  "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  Id. (citing Foman v. Davis, 371 U.S. 178, 182 (1982)).  The same standard applies when a party seeks to amend a pleading to add or remove parties pursuant to Federal Rule of Civil Procedure 21.  See, e.g., Michalek v. Amplify

---

[10] After the instant motion was fully briefed, plaintiffs filed a letter motion seeking leave to move to enforce the Supreme Court's preliminary injunction, and for contempt sanctions in violation thereof, which Macy's opposed.  See ECF Nos. 36-38.  Having concluded that the issue is complex and having concluded that it would be better addressed, if at all, following the issuance of this opinion, we deny plaintiffs leave without prejudice.

Sports & Entm't LLC, No. 11 Civ. 508(PGG), 2012 WL 2357414, at *1 (S.D.N.Y. June 20, 2012).

An amendment is "futile" if it would not withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002) (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)). Because proposed amendments are held to the Rule 12(b)(6) standard, leave to amend may be denied if plaintiffs fail to allege "enough facts to state a claim for relief that is plausible on its face." Fortis Bank S.A./N/V/ v. Brookline Fin. LLC, No. 10 Civ. 894 (NRB), 2011 U.S. Dist. LEXIS 47901, at *9 (S.D.N.Y. Mar. 22, 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Similarly, in a proposed class action, leave to amend may be denied if the amended class could not be certified. See, e.g., Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 104 (S.D.N.Y. 2010).

In opposition to plaintiffs' motion for leave to amend, Macy's does not argue that the proposed amended class action complaint is the product of bad faith or undue delay, nor does Macy's suggest that granting the motion would cause them undue prejudice. We agree. Instead, Macy's argues, and this opinion concerns, whether granting plaintiffs leave to amend would be futile because the claims asserted therein would not survive a motion to dismiss and/or a class certification motion.

18

Specifically, Macy's argues that plaintiffs' proposed fraud, unjust enrichment, GBL § 349, abuse of process, and § 1983 claims do not state a claim for which relief could be granted. Macy's does not, however, challenge the legal sufficiency of plaintiffs' false arrest and "assault/battery" claims, but does assert that Melgar and Lema's causes of actions thereunder are time-barred. Finally, Macy's contends that plaintiffs' class claims are futile as plaintiffs could not certify the putative class as it is defined in the proposed amended class action complaint.[11]  We consider these arguments *seriatim*.

## II. Failure to State a Claim for Which Relief Could Be Granted

To state a claim for which relief could be granted under Rule 12(b)(6), a complaint must include "enough facts to state a claim that is plausible on its face." Bell Atl., 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  If plaintiffs fail to "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." Bell Atl., 550

---

[11]    Both Macy's and Palmer consent to the amendment of plaintiffs' complaint to the extent it withdraws all claims against Palmer.  This aspect of plaintiffs' motion is granted.

U.S. at 570.

In applying this standard, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff[s'] favor." Littlejohn v. City of New York, 795 F.3d 297, 306-07 (2d Cir. 2015) (citing Ofori-Tenkorang v. Am. Int'l Grp., Inc., 460 F.3d 296, 300 (2d Cir. 2006)). However, "we give no effect to assertions of law or legal conclusions couched as factual allegations." Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) (quoting Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010)).

### a. Fraud

Plaintiffs allege that Macy's defrauded them by (1) "fraudulently simulating or assuming the role of law enforcement," (2) "falsely promising to release its detainees if they pay or agree to pay civil penalties," and (3) "falsely threatening them with increased penalties if they do not pay before they appear in court and have access to counsel." PAC ¶¶ 82-83.

To state a claim for fraud under New York law, a plaintiff must allege: "(1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Fin. Guar. Ins. Co. v. Putnam Advisory Co., 783 F.3d 395, 402 (2d Cir. 2015) (citing Crigger v. Fahnestock & Co., 443 F.3d 230, 234

(2d Cir. 2006)).   In asserting a fraud claim, plaintiffs must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b) by "stat[ing] with particularity the circumstances constituting fraud or mistake."   Fed. R. Civ. P. 9(b). Specifically, allegations of fraud must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."   Fin. Guar., 783 F.3d at 402-03 (internal quotation marks omitted) (quoting Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2012)).   We apply these standards to the three allegedly fraudulent acts *seriatim*.

### i.   Simulating or Assuming the Role of Law Enforcement

Plaintiffs first assert that Macy's "extorts civil penalties from suspected shoplifters by fraudulently simulating or assuming the role of law enforcement."   PAC ¶ 82.   This is so, they allege, because Macy's "employs all the trappings of police authority — threat of handcuffs, jail cells, and/or full-body searches" as "potent devices for bullying and frightening their detainees." Id. ¶ 84.

This particular fraud claim fails for several reasons, most importantly because plaintiffs have not identified any sort of misrepresentation.   While Macy's allegedly used "handcuffs," "jail

21

cells," and "full-body" searches, there is no allegation that Macy's personnel identified themselves as law enforcement officers, or made any statements to imply that they were acting in a law enforcement capacity.

Further, there is no indication that any of the plaintiffs relied upon the "trappings of police authority" to their detriment. Not a single plaintiff has implied that he acted on the basis of falsely believing, as a result of Macy's alleged use of handcuffs, jail cells, and full-body searches, that the loss prevention personnel were in fact law enforcement officers.

### ii.  False Promises of Release Upon Payment and Confession

Second, plaintiffs allege that Macy's loss prevention officers "falsely promis[e] to release its detainees if they pay or agree to pay civil penalties."  Id. ¶ 83.  Elsewhere in the proposed amended class action complaint, plaintiffs assert that their release was falsely conditioned not only on paying or agreeing to pay a civil penalty, but also to signing a statement confessing to the offense.  See, e.g., id. ¶ 18.

It is clear that Orellana, Moftah, Ramirez, Perullo, Melgar, Lema, and Osongba have alleged an affirmative misrepresentation. All allege that they were told that if they signed a civil demand notice and paid, or agreed to pay, a civil penalty, and/or signed a confession, they would be released.  See id. ¶¶ 28 (Orellana), 36 (Moftah), 39 (Ramirez) 45 (Perullo), 48 (Melgar), 52 (Lema), 69

(Osongba).  Yet they were instead subsequently held until the police arrived to arrest them.  See id. ¶¶ 29 (Orellana), 36 (Moftah), 41 (Ramirez) 45 (Perullo), 49 (Melgar), 53 (Lema), 69 (Osongba).  The other plaintiffs, however, have not alleged facts to support this assertion.  Nahar and Hoque were instructed that they owed Macy's $500, but not that they would be released if they made payment.  See id. ¶¶ 61-62.  Ratner was simply told, "It will be easier for you if you pay us $500 right now."  Id. ¶ 55 (internal quotation marks omitted).  And Acteopan was "required to sign a paper in the store which she believed was an admission to shoplifting, and an agreement to pay a $500 penalty," but not told that she would be released if she did so.  Id. ¶ 66.  Moreover, Acteopan was subsequently released.

Plaintiffs have also adequately alleged knowledge of the falsity of the representation because the suspects were already being held for the police at the time the statement was made.  See id. ¶ 2.

Where plaintiffs have failed to explicitly allege that Macy's acted with an intent to defraud, the issue becomes whether the proposed amended class action complaint may be read to implicitly allege that element.  See United Merch. Wholesale, Inc. v. IFFCO, Inc., 51 F. Supp. 3d 249, 269 (E.D.N.Y. 2014).  To satisfy this requirement, a plaintiff must "allege facts that give rise to a strong inference of fraudulent intent," Acito v. IMCERA Grp., Inc.,

47 F.3d 47, 52 (2d Cir. 1995), either "(a) by alleging facts to show that [the] defendant[] had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). Plaintiffs have alleged that Macy's had the motive and opportunity to commit fraud. Because confessions, payments, and agreements to pay were obtained "before [plaintiffs] appear[ed] in court and ha[d] access to counsel," PAC ¶ 83, Macy's had the motive to defraud. And because plaintiffs were detained, in a cell, sometimes handcuffed, and in certain instances without access to their belongings, see, e.g., id. ¶¶ 4, 34, 39, 44, they were eager to be released from Macy's custody, supplying the requisite opportunity.

Plaintiffs have also adequately alleged their justifiable reliance on Macy's misrepresentations based on the circumstances in which they were made. In determining whether a plaintiff reasonably relied on an alleged misrepresentation, courts consider "the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc., 343 F.3d 189, 195 (2d Cir. 2003) (citing Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1541-43 (2d Cir. 1997)). According to the New

York Court of Appeals, where "facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations." Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 322, 157 N.E.2d 597 (1959) (quoting Schumaker v. Mather, 133 N.Y. 590, 596, 30 N.E. 755 (1892)).  In the parallel fraudulent inducement context, "a party may not justifiably rely on a representation that is specifically disclaimed in a written agreement." Passelaigue v. Getty Images (US), Inc., No. 16-CV-1362 (VSB), 2018 WL 1156011, at *3 (S.D.N.Y. Mar. 1, 2018) (citing Dall. Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 785 (2d Cir. 2003)); see Meadowlands Invs., LLC v. CIBC World Mkts. Corp., No. 04 Civ. 7328(DAB), 2005 WL 2347856, at *5 (S.D.N.Y. Sept. 22, 2005); Dandong v. Pinnacle Performance Ltd., No. 10 Civ. 8086(LBS), 2011 WL 5170293, at *16 (S.D.N.Y. Oct. 31, 2011) (noting that the elements of fraud and fraudulent inducement claims under New York law are "the same"), aff'd in part, remanded on other grounds sub nom. Leng v. Pinnacle Performance Ltd., 474 F. App'x 810 (2d Cir. 2012) (summary order).

Plaintiffs relied on statements made by authoritative figures, Macy's loss prevention employees, who were responsible

25

for leading them off the sales floor, detaining them, handcuffing them, locking them in a jail cell, depriving them of their possessions, and subjecting them to a body search. See PAC ¶ 4. Further, none of the individual plaintiffs are particularly sophisticated, especially in comparison to a large corporation like Macy's, and several are not from the United States and/or several speak only limited English. See, e.g., id. ¶¶ 7, 26, 32, 38, 51-52, 70. That a detainee in an environment that is, by plaintiffs' accounts, so unpleasant and coercive by Macy's own design would rely upon an authoritative figure's representation that he could be released so long as he acceded to his detainer's demands is entirely justifiable.

Macy's, however, argues that plaintiffs could not have justifiably relied upon the alleged misrepresentation because it was directly contradicted by language in the civil demand notices which all of the plaintiffs other than Osongba contemporaneously acknowledged receiving. Macy's points to the following language in particular: (1) "This claim is totally separate from any criminal punishment or penalties arising from this incident;" (2) "Paying the civil demand fee is not in any way related to criminal punishment;" and (3) in bold face, **"Macy's intends to criminally prosecute this case and you will be referred for prosecution, regardless of whether or not we collect any civil demand payment**

**at this time.**"[12]  Feder Decl. Ex. A.  According to Macy's, plaintiffs simply needed to read the plain language of the civil demand notice to understand that they would be arrested regardless of whether they paid or agreed to pay a civil penalty and/or confessed to shoplifting.  We disagree.

The civil demand notice can be read to inform the detainee that the collection (or non-collection) of civil penalties is separate and apart from any criminal proceedings that Macy's intends to initiate.  The notice might even be read as affording plaintiffs notice, through use of the language "you will be referred for prosecution," that they will be arrested by police. But nothing in the notice suggests that plaintiffs will be arrested at that time, as opposed to being released and only subsequently arrested.  In fact, the language in the notice explaining that the civil penalty is "totally separate from any criminal punishments or penalties arising from this incident," militates against reading the notice as advising plaintiffs that they will be arrested immediately thereafter.  Plaintiffs may well have believed, given Macy's alleged promises of release, as well as the defined separation between the civil and criminal proceedings, that they would be released from Macy's detention and

---

[12]  At some point between July 2015, when Moftah was detained, and January 2016, when Perullo was detained, the civil demand notice was modified, and the words "at this time" omitted.  Compare Feder Decl. Ex. B, with id. Ex. E.

27

"separate[ly]" contacted by law enforcement using the addresses they provided Macy's in their signed confession forms.

Finally, all but Osonbga allegedly suffered damages by (1) signing a confession that could subject them to criminal liability, (2) paying civil penalties, and/or (3) agreeing to pay civil penalties.[13] Osongba "declined to sign." PAC ¶ 70.

Accordingly, Orellana, Moftah, Ramirez, Perullo, Melgar, and Lema have stated an actionable claim for fraud with respect to being assured that they would be released if they paid or agreed to pay civil fines and/or signed confessions.

### iii. Threats of Increased Civil Penalties

Finally, plaintiffs allege that Macy's loss prevention personnel "falsely threaten[] them with increased penalties if they do not pay before they appear in court and have access to

---

[13] Macy's argues that, by signing and initialing the civil demand notice, plaintiffs merely acknowledged receipt of the notice, but did not actually commit to making any payments. We disagree. Detained plaintiffs were allegedly instructed to initial next to, *inter alia*, the following statements to "signify understanding and agreement": "If the entire civil demand fee is not paid within 3 days, a letter may be mailed to your home address demanding the amount of the civil demand fee we will be seeking;" "after being released, you may pay at any store register or use one of the payment options below to settle this civil claim within 3 days to avoid any further civil action;" and "I have received a copy of the State civil demand statute, payment envelope, and flyer." Feder Decl. Ex. F (emphasis added). Finally, before signing at the bottom, plaintiffs were provided a list of different payment options: "Online/Pay Pal," "Phone," "Mail," or "Store." Id. In other words, plaintiffs signed forms pursuant to which they "underst[ood] and agree[d]" that they were to make payments upon release from detention, as well as the consequences of failing to do so expeditiously. Drawing all inferences in the plaintiffs' favor, we read plaintiffs' signatures and initials thereof as agreeing to pay civil penalties in the future. See Crawford v. Recovery Partners, No. 12 Civ. 8520, 2014 WL 1695239, at *5 (S.D.N.Y. Apr. 28, 2014) (citing Weixel v. Bd. of Educ., 287 F.3d 138, 145 (2d Cir. 2002)).

counsel." Id. ¶ 83.

Here, Ramirez, Nahar, and Acteopan have alleged an actionable
misstatement; each was allegedly informed that she would be subject
to penalties in excess of those authorized by GOL § 11-105 if she
failed to pay what was currently owed before making a court
appearance. See id. ¶¶ 40 (Ramirez), 62 (Nahar), 67 (Acteopan).

Their claims fail, however, because neither Ramirez, Nahar,
nor Acteopan allege that they actually relied, reasonably or
otherwise, on this representation, or that they suffered any
resulting injury. There is no allegation that, in fear of
incurring additional penalties, plaintiffs fulfilled their civil
demand obligations prior to their court appearance, or conducted
themselves any differently because they believed the penalties
would increase if they failed to timely pay. In fact, the proposed
amended class action complaint does not even allege that Ramirez,
Nahar, or Acteopan ever made a civil demand payment. Further,
even had plaintiffs relied on the misrepresentation, the reliance
would not have been reasonable as a matter of law. The civil
demand notice that Ramirez, Nahar, and Acteopan acknowledged
receiving clearly stated the applicable civil penalties. See Feder
Decl. Exs. F (Ramirez), H (Nahar), I (Acteopan). The notice
explained that GOL § 11-105 "provides that a person who commits
larceny against the property of a mercantile establishment shall
be civilly liable to the merchant for the retail price of damaged

or unrecovered merchandise, up to $1500, plus a penalty of 5 times the retail price of the merchandise or $75, whichever is greater, but not to exceed $500." Id. Nahar and Acteopan acknowledged with their initials that the "[t]otal [a]mount of civil damages New York law allows in this incident," or "Penalty + Damages," was $500. See id. Exs. H, I. And Ramirez initialed next to a statement that, perhaps by accident, stated the "total amount" was $0. See id. Ex. F. Given that plaintiffs were instructed in plain language as to what New York law authorized Macy's to collect, as well as the applicable maxima in their cases, they could not have reasonably relied on a statement that the civil penalties would increase if not satisfied prior to their criminal court appearances.[14] See Wash. Capital Ventures, LLC v. Dynamicsoft, Inc., 373 F. Supp. 2d 360, 365 (S.D.N.Y. 2005) ("New York law clearly conditions fraud on the reasonability of the plaintiff's reliance on a material misrepresentation, which in turn cannot be established when a party fails to read an unambiguously-worded agreement.").

### b. Unjust Enrichment

Plaintiffs next contend that Macy's is liable for unjust enrichment because the civil penalties "were obtained wrongfully,

---

[14] Albeit not an actionable misstatement, Macy's threat to increase civil penalties, if made, contributes to the inherently coercive environment that renders reasonable plaintiffs' reliance on other of Macy's misrepresentations.

and as such it is only just that Macy's return the moneys that they collected from Plaintiffs and the prospective class members." PAC ¶ 84.

To state a claim for unjust enrichment under New York law, a plaintiff must show "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Choi v. Tower Research Capital LLC, 890 F.3d 60, 69 (2d Cir. 2018) (quoting Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000)). Yet "unjust enrichment is not a catchall cause of action to be used when others fail. . . . An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790-91, 967 N.E.2d 1177 (2012); see Alce v. Wise Foods, Inc., No. 17 Civ. 2402 (NRB), 2018 WL 1737750, at *11-12 (S.D.N.Y. Mar. 27, 2018).

Here, plaintiffs' unjust enrichment claim merely duplicates their "conventional" fraud claim. See PAC ¶¶ 82 ("Macy's extorts civil penalties from suspected shoplifters by fraudulently simulating or assuming the role of law enforcement." (emphasis added)); 83 ("Macy's compounds the abuse of the criminal process by falsely promising to release its detainees if they pay or agree to pay civil penalties, and by falsely threatening them with increased penalties if they do not pay before they appear in court and have access to counsel." (emphasis added)). In fact,

plaintiffs' third cause of action is labeled "Fraud/Unjust Enrichment." Id. at 10. Accordingly, plaintiffs' proposed unjust enrichment claim is futile. See Weisblum v. Prophase Labs, Inc., 88 F. Supp. 3d 283, 296-97 (S.D.N.Y. 2015) (dismissing unjust-enrichment claims as duplicative of tort claims, including fraud); Allstate Ins. Co. v. Nazarov, No. 11-CV-6187(PKC)(VMW), 2015 WL 5774459, at *16 (E.D.N.Y. Sept. 30, 2015) (same).[15]

### c. GBL § 349

Plaintiffs allege that Macy's violated New York's prohibition on deceptive business practices, GBL § 349, by (1) "[i]mprisoning alleged shoplifters for an unreasonable manner," (2) "[t]hreatening and coercing alleged shoplifters into signing confessions and promissory notes," and (3) "[d]emanding civil penalties from alleged shoplifters while they are under Defendant's detention." PAC ¶ 87(a)-(c).

A cause of action under GBL § 349 has three elements: (1) "the challenged act or practice was consumer-oriented;" (2) "it was misleading in a material way;" and (3) "the plaintiff suffered

---

[15] The Supreme Court, in rejecting Macy's argument that Orellana "ha[d] failed to plead facts to establish that equity and good conscience require the return of the funds at issue, i.e., the civil recovery permitted by GOL § 11-105," declined to dismiss the unjust enrichment claim in the initial class action complaint. See Order at 3, Orellana v. Macy's Retail Holdings, Inc., No. 453060/2015 (N.Y. Sup. Ct. June 24, 2016), ECF No. 1-7. The law of the case doctrine does not preclude a different holding at this stage, however, because the basis for our futility determination is that the unjust enrichment claim is duplicative of the newly asserted fraud claim. See Quern v. Jordan, 440 U.S. 332, 347 n.18 (1979) ("The doctrine of law of the case comes into play only with respect to issues previously determined.").

injury as a result of the deceptive act." <u>Crawford v. Franklin Credit Mgmt. Corp.</u>, 758 F.3d 473, 490 (2d Cir. 2014) (quoting <u>Stutman v. Chem. Bank</u>, 95 N.Y.2d 24, 29, 731 N.E.2d 608 (2000)). Yet unlike common law fraud, GBL § 349 claims "need not include proof of intent to deceive, *scienter*, or justifiable reliance." <u>M&T Mortg. Corp. v. White</u>, 736 F. Supp. 2d 538, 570 (E.D.N.Y. 2010) (citing <u>Petitt v. Celebrity Cruises, Inc.</u>, 153 F. Supp. 2d 240, 265 (S.D.N.Y. 2001)). Macy's contends that plaintiffs have not established any of GBL § 349's elements, which we proceed to consider *seriatim*.[16]

### i. Consumer-Oriented Practice

At the threshold, plaintiffs must establish that Macy's

---

[16] Macy's argues, in a footnote, that Orellana, Melgar, Lema, and Ratner's GBL § 349 claims are barred by the applicable three-year statute of limitations. <u>See</u> Def. Macy's Opp'n Pls.' Mot. Leave Amend ("Def.'s Opp'n") 10 n.11 (citing <u>Gaidon v. Guardian Life Ins. Co. of Am.</u>, 96 N.Y.2d 201, 208-10, 750 N.E.2d 1078 (2001)). Arguments made wholly in a footnote usually need not be addressed by the Court. <u>In re Gildan Activewear, Inc. Sec. Litig.</u>, No. 08 Civ. 5048(HB), 2009 WL 4544287, at *4 n.4 (S.D.N.Y. Dec. 4, 2009); <u>see City of Syracuse v. Onondaga County</u>, 464 F.3d 297, 308 (2d Cir. 2006). Regardless, Macy's argument fails because the amended claims relate back to the initial filing of this action, which occurred within three years of each plaintiff's detention. Federal Rule of Civil Procedure 15(c) provides that an amended pleading may "relate[] back" if the law that supplies the statute of limitations allows relation back. Fed. R. Civ. P. 15(c)(1)(A). New York C.P.L.R. § 203(f), in turn, authorizes relation back "unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading." N.Y. C.P.L.R. § 203(f). Orellana, Melgar, Lema, and Ratner's GBL § 349 claims arise out of the same series of transactions that give rise to the existing claims: demands for confessions and payments or agreements to pay civil penalties from suspected shoplifters while they are being detained. <u>Cf.</u> <u>Thrane v. Franklin First Fin., Ltd.</u>, 266 F.R.D. 51, 53 (E.D.N.Y. 2010). As all of the plaintiffs were detained, and thus subject to Macy's allegedly misleading practices, within three years of the commencement of this lawsuit in July 2015, their GBL § 349 claims are timely. PAC ¶¶ 26 (Orellana), 47 (Melgar), 51 (Lema), 55 (Ratner); <u>see</u> N.Y. C.P.L.R. §§ 203(c), 304(a) (a claim is interposed, for statute of limitations purposes, when the notice and summons are filed with the clerk of the court).

challenged practices are "consumer-oriented." Specifically, a plaintiff must "demonstrate that the acts or practices have a broader impact on consumers at large." Oswego Laborers' Local 214 Pension Fund v. Marina Midland Bank, 85 N.Y.2d 20, 25, 647 N.E.2d 741 (1995); see N.Y. Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 320, 662 N.E.2d 763 (1995) ("The conduct need not be repetitive or recurring but defendant's acts or practices must have a broad impact on consumers at large; 'private contract' disputes unique to the parties . . . would not fall within the ambit of the statute." (internal quotation marks omitted)). Yet the "consumer-oriented" requirement is construed "liberally," Mayfield v. Asta Funding, Inc., 95 F. Supp. 3d 685, 700 (S.D.N.Y. 2015) (citing New York v. Feldman, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002)), and is satisfied if a private transaction has "ramifications for the public at large," or is "harmful to the public interest." M&T Mortg., 736 F. Supp. 2d at 571 (quoting Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc., 328 F. Supp. 2d 443, 447-49 (S.D.N.Y. 2004)). Whether conduct is "consumer-oriented" turns on several factors: (1) the amounts at stake, (2) the sophistication of the parties, and (3) the nature of the transaction at issue. See Fleisher v. Phx. Life Ins. Co., 858 F. Supp. 2d 290, 304 (S.D.N.Y. 2012) (citing Interested Underwriters at Lloyd's of London Subscribing to Policy # 991361018 v. Church Loans & Invs. Tr., 432 F. Supp. 2d 330, 332 (S.D.N.Y. 2006)). The application

of these factors makes clear that the challenged conduct at issue is consumer-oriented.

First, the amounts at stake are quite modest: Macy's was empowered to collect no more than $2,000—$1,500 in damages and a $500 penalty—from each plaintiff. N.Y. Gen. Oblig. Law § 11-105(5), (6); see Pfizer, Inc. v. Stryker Corp., No. 02 Civ.8613 LAK, 2003 WL 21660339, at *4 (S.D.N.Y. July 15, 2003) (concluding that a $2 billion transaction was not consumer-oriented).

Second, as discussed *supra*, none of the plaintiffs are particularly sophisticated—especially in comparison to Macy's, a major corporation operating 885 stores nationwide—and some speak very limited English. See PAC ¶¶ 7, 26, 32, 38, 51-52, 65, 70; Phifer v. Home Savers Consulting Corp., No. 06 CV 3841(JG), 2007 WL 295605, at *5 (E.D.N.Y. Jan. 30, 2007) (finding relevant that plaintiff "allege[d] herself to be a relatively unsophisticated market player who 'had trouble understanding' documents she was made to sign quickly and with misleading expectations").

Finally, the transaction at issue is inherently consumer-oriented in nature. The statutory authority pursuant to which Macy's allegedly detained plaintiffs and collected civil fines therefrom, i.e., the powers plaintiffs maintain Macy's abused, is explicitly consumer-oriented in scope. Specifically, a "retail mercantile establishment" permitted to detain suspected

shoplifters under GBL § 218 is "a place where goods, wares or merchandise are offered to the public for sale," N.Y. Gen. Bus. Law § 217(1), and a "mercantile establishment" authorized to collect civil penalties under GOL § 11-105 is "a place or vehicle where goods, wares or merchandise are offered for sale or a place or vehicle from which deliveries of goods, wares or merchandise are made," N.Y. Gen. Oblig. Law § 11-105(1). Further, the universe of persons who may be detained as suspected shoplifters will, with rare exceptions discussed *infra*, be comprised solely of individuals who, from Macy's perspective, are potential customers as soon as they enter the store. And while it is true that some of the detained shoplifters may never have intended to engage in consumer activity, and instead visited Macy's for the sole purpose of committing larceny, Macy's policy sweeps broader, and may well sweep innocent shoppers into its net. In that sense, Macy's policy affects the public interest, and thus rightly falls within GBL § 349's ambit.

Thus, Macy's challenged practices are "consumer-oriented" such that plaintiffs satisfy GBL § 349's threshold requirement. There is, however, one exception. Lema was a contractor working in a Brooklyn store as part of a cleaning crew when she was seen pocketing several retail items. See PAC ¶ 51. No element of her claim relates to consumers, such that her GBL § 349 claim fails.

**ii. Materially Misleading**

The New York Court of Appeals has adopted an "objective" approach for determining whether a challenged consumer practice is materially misleading; the test is whether the alleged act is "likely to mislead a reasonable consumer acting reasonably under the circumstances." Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007) (quoting Oswego Laborers, 85 N.Y.2d at 26, 647 N.E.2d 741). This standard encompasses a "far greater range of claims" than common law fraud. Gaidon, 96 N.Y.2d at 209, 750 N.E.2d 1078. Further, it is "well settled" that a court may determine as a matter of law whether allegedly deceptive conduct would have misled a reasonable consumer. Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013).

Macy's correctly argues that the first act plaintiffs allege, "[i]mprisoning alleged shoplifters for an unreasonable manner," PAC ¶ 87(a), does not entail any deceptive conduct. Simply because the alleged detention may have been unreasonable does not render it misleading in any sense.

By contrast, Macy's practice of "[t]hreatening and coercing alleged shoplifters into signing confessions and promissory notes" and "[d]emanding civil penalties from alleged shoplifters while they are under Defendant's detention," id. ¶ 87(b)-(c), is misleading to the extent loss prevention officers falsely represented to Orellana, Moftah, Ramirez, Perullo, Melgar,

Ratner,[17] and Osongba that they would be released from custody if they signed confessions, made payments, or agreed to make future payments. See id. ¶¶ 28 (Orellana), 36 (Moftah), 39 (Ramirez), 45 (Perullo), 48 (Melgar), 56 (Ratner), 69 (Osongba). Yet Macy's argues, pointing to the same language in the civil demand notice as it did in the fraud context *supra*, that a reasonable consumer would not be misled given notice of written affirmative disclosures to the contrary. We disagree.

As we already explained, the language in the civil demand notice fails to disclaim that plaintiffs would not be released irrespective of whether they paid or agreed to pay civil penalties and/or signed confessions. Regardless, under GBL § 349, "the mere presence of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations." Delgado v. Ocwen Loan Servicing, LLC, No. 13-CV-4427 (NGG)(RML), 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014). Rather, a misrepresentation is not cured as a matter of law by a contradictory disclaimer, at least where the subject matter of the misrepresentation is within the defendant's control. In Goshen v. Mutual Life Insurance Co. of New York, 98 N.Y.2d 314, 323, 774

---

[17] Ratner was told, "It will be easier for you if you pay us $500 right now," PAC ¶ 56, which we find to be materially misleading even if not fraudulent. See Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005) (GBL § 349 "extends well beyond common-law fraud to cover a broad range of deceptive practices.").

N.E.2d 1190 (2002), the defendants, DSL providers, made certain misleading representations regarding the quality of their internet service but also made disclaimers in their service agreement stating that "the service is provided on an 'as is' or 'as available' basis." The New York Court of Appeals concluded that these disclaimers were insufficient to render the representation about service quality not misleading, because the quality of the service was allegedly "defective due to malfunctions largely or wholly within defendants' control" and the defendants allegedly "knew this to be the case" and the "promotional representations were therefore knowingly deceptive." Id. at 326, 774 N.E.2d 1190. Similarly, in Ward v. TheLadders.com, Inc., 3 F. Supp. 3d 151, 168-69 (S.D.N.Y. 2014), the defendant operator of a job placement website argued that representations on its website about the quality of job listings—"experts pre-screen all jobs so they're always a $100K+"—were not misleading in light of the terms of use which notified users that the postings were provided on an "as is" or "as available basis." The court concluded that the defendant's failure to pre-screen jobs as advertised "would be a failure wholly within the defendant's control." Id. at 169. "Therefore, the defendant's representations . . . would be 'knowingly deceptive' and misleading." Id.

Here, even if the civil demand notice could be read as notifying plaintiffs that, contrary to Macy's oral

representations, they would not be released from detention and instead arrested, plaintiffs would still have alleged an actionable misleading practice because the ability to release plaintiffs as opposed to continuing to detain them and having them arrested was solely within Macy's control.[18]

### iii. Injury

Finally, to satisfy the injury requirement under GBL § 349, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." Orlander v. Staples, Inc., 802 F.3d 289, 302 (2d Cir. 2015) (citing Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 56, 720 N.E.2d 892 (1999)). Here, plaintiffs allege that, relying upon Macy's representations that they would be released if they did so, they paid or agreed to pay civil penalties and/or confessed to shoplifting. Macy's makes two arguments for why these actions do not satisfy the injury requirement.

First, Macy's asserts that "six of the proposed plaintiffs do not even allege that they made any civil demand payments, so they necessarily suffered no injury from any representation about civil

---

[18] Indeed, to release plaintiffs without involving law enforcement would be to fulfill GOL § 11-105's intended purpose of relieving the criminal courts of the burden of prosecuting these cases, and "allowing most cases to be resolved through a civil case or [out] of court settlement." N.Y. Bill Jacket, S.B. 3916/A.B. 5783, 189th Leg., 1991 Sess., ch. 724, at 4-5 (1991).

demands." Def.'s Opp'n 13. Macy's misunderstands the injury requirement; although a plaintiff must prove actual injury under the statute, the injury need not be pecuniary in nature. Stutman, 95 N.Y.2d at 29, 731 N.E.2d 609 (citing Oswego Laborers, 85 N.Y.2d at 26, 647 N.E.2d 741). Here, the plaintiffs who did not actually make civil payments agreed to do so in the future, creating an injurious obligation, and/or signed confessions to shoplifting.

Second, as to the plaintiffs who did make civil demand payments, Macy's argues that "in light of the clear written explanation about the lack of relationship between civil demand payments and Macy's decision to press charges, any payment they made cannot plausibly be alleged to have resulted from deception." Def.'s Opp'n 13. This argument was considered, and rejected, in concluding that plaintiffs alleged materially misleading acts.

Thus, Orellana, Moftah, Ramirez, Perullo, Melgar, and Ratner have asserted an actionable claim under GBL § 349 to the extent they allege they were misled into believing that they would be released so long as they confessed and/or paid or agreed to pay a civil penalty. However, Osongba, having declined to pay or agree to pay a civil penalty, or to sign a confession, did not suffer injury for purposes of GBL § 349 from Macy's allegedly misleading practice.

### d. Abuse of Process

Plaintiffs allege that Macy's has committed the tort of abuse

of process by "regularly issuing boiler-plate Supporting Depositions which become the basis and part of Criminal Court proceedings against individuals accused of shoplifting at their stores" for the "improper and ulterior purpose" of "induc[ing] those suspects into paying Macy's civil penalties and to execut[ing] confessions of judgment and facilit[ating] the collection of these civil penalties." PAC ¶¶ 77-78.

The "gist" of the abuse of process tort is "said to be the misuse of legal process primarily to accomplish a purpose for which it was not designed, usually to compel the victim to yield on some other matter not involved in the suit, or to harass litigation opponents by clearly wrongful conduct." Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, <u>Dobbs' Law of Torts</u> § 594 (2d ed. 2018). Under New York law, "a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." <u>Savino v. City of New York</u>, 331 F.3d 63, 69-70 (2d Cir. 2003) (quoting <u>Cook v. Sheldon</u>, 41 F.3d 73, 80 (2d Cir. 1994)). "The traditional rule in New York has been that 'the pursuit of a collateral objective must occur <u>after</u> the process is issued; the mere act of issuing process does not give rise to a

claim.'"[19] <u>Gilman v. Marsh & McLennan Cos.</u>, 868 F. Supp. 2d 118, 131 (S.D.N.Y. 2012) (quoting <u>Lopez v. City of New York</u>, 901 F. Supp. 684, 691 (S.D.N.Y. 1995)), <u>aff'd</u>, 654 F. App'x 16 (2d Cir. 2016) (summary order); <u>accord</u> <u>Berry v. Deutsche Bank Tr. Co. of Ams.</u>, No. 07 Civ. 7634(WHP), 2008 WL 4694968, at *7 (S.D.N.Y. Oct. 21, 2008), <u>aff'd</u>, 378 F. App'x 110 (2d Cir. 2010) (summary order).

Plaintiffs allege that the completion of supporting depositions by loss prevention employees constitutes "process" because law enforcement "relies on these supporting depositions" and does "not conduct an independent investigation of the allegations against individuals accused of shoplifting." PAC ¶ 78. Furthermore, "[t]he subsequent Criminal Complaints filed against accused individuals arrested at Macy's department stores mirror the information provided in the boiler-plate supporting depositions produced and provided to law enforcement by Macy's loss prevention specialists." <u>Id.</u> We disagree.

──────────────

[19] In <u>Parkin v. Cornell University, Inc.</u>, 78 N.Y.2d 523, 530, 583 N.E.2d 939 (1991), the New York Court of Appeals considered in *dicta* whether this timing requirement is truly dispositive of an abuse of process claim. <u>See id.</u> ("We have noted several times that the gist of the action for abuse of process lies in the improper use of process after it is issued. . . . It is not clear, however, whether this language should be viewed as a strict and limiting definition of the tort or whether it is merely illustrative." (internal quotation marks and citations omitted)). The Second Circuit has, after <u>Parkin</u>, repeatedly maintained that "[t]he gist of abuse of process is the improper use of process <u>after</u> it is regularly issued." <u>Cook</u>, 41 F.3d at 80; <u>see</u> <u>Gilman v. Marsh & McLennan Cos.</u>, 654 F. App'x 16, 16 (2d Cir. 2016) (summary order). This "Court is bound by the law of the Circuit . . . . Accordingly, the *dicta* . . . from <u>Parkin</u> does not alter the established law governing malicious abuse of process claims." <u>Richardson v. N.Y.C. Health & Hosps. Corp.</u>, No. 05 Civ. 6278(RJS), 2009 WL 804096, at *16 (S.D.N.Y. Mar. 25, 2009).

In the context of an abuse of process claim, "[c]ourts define the necessary legal process as a direction or demand that the person to whom it is directed perform or refrain from the doing of some prescribed act." Korova Milk Bar of White Plains, Inc. v. PRE Props., LLC, No. 11 Civ. 3327(ER), 2013 WL 417406, at *15 (S.D.N.Y. Feb. 4, 2013) (internal quotation marks omitted) (quoting Nickerson v. Commc'n Workers of Am. Local 1171, No. 504CV00875NPM, 2005 WL 1331122, at *8 (N.D.N.Y. May 31, 2005)); accord Julian J. Studley, Inc. v. Lefrak, 41 N.Y.2d 881, 884, 362 N.E.2d 611 (1977). In other words, process entails that which is capable of "compelling the performance or forbearance of some prescribed act." Berisic v. Winckelman, 40 A.D.3d 561, 562, 835 N.Y.S.2d 390 (2d Dep't 2007) (quoting James v. Saltsman, 99 A.D.2d 797, 797-98, 472 N.Y.S.2d 129 (2d Dep't 1984)). As an initial matter, the proposed amended class action complaint only alleges that Macy's prepared supporting depositions with respect to Orellana, Moftah, and Lema.[20] See PAC ¶¶ 29 (Orellana), 36 (Moftah), 54 (Lema). Regardless, the supporting depositions are nothing more than sworn statements to the police, which cannot by themselves compel or forbid any conduct. Their completion by Macy's loss prevention officers does not *per se* "direct or demand"

---

[20] While the proposed amended class action complaint does not contain a factual allegation that a supporting deposition was prepared with respect to Osongba, Macy's has submitted a copy thereof. See Feder Decl. Ex. X.

44

detainee-plaintiffs to either "perform or refrain from the doing of some prescribed act." Korova Milk Bar, 2013 WL 417406, at *15. Accordingly, their use may not be considered "process."

On the other hand, that Macy's caused all but Acteopan to be arrested and to face criminal prosecution is in fact process.[21] See W. Page Keeton et al., Prosser & Keeton on Torts § 121, p. 899 (5th ed. 1984) (listing "arrest of the person" and "criminal prosecution" as quintessential forms of process). Indeed, in denying Macy's motion to dismiss plaintiffs' initial class action complaint, the Supreme Court rejected Macy's argument that "calling the police and making a criminal complaint is not 'process' that can be abused." Order at 3, Orellana v. Macy's Retail Holdings, Inc., No. 453060/2015 (N.Y. Sup. Ct. June 24, 2016), ECF No. 1-7.

Plaintiffs' claim must still fail, however, because the pursuit of "collateral objectives" to which plaintiffs point, "induc[ing] suspects into paying Macy's civil penalties and to execut[ing] confessions of judgment and facilit[ating] collection of these civil penalties," preceded their arrests. See Gilman, 868 F. Supp. 2d at 131. The proposed amended class action complaint alleges that Macy's coerced plaintiffs into confessing

---

[21] GBL § 218 does not provide an affirmative defense to abuse of process. See N.Y. Gen. Bus. Law § 218.

to shoplifting, and paying or agreeing to pay civil penalties, with promises of release, as well as increased penalties if plaintiffs did not pay thereafter. All of these efforts occurred _before_ plaintiffs were arrested. Indeed, a key element of plaintiffs' fraud claim is that they were misled into believing they would be released, and _not_ immediately arrested, after they confessed, paid, or agreed to pay civil penalties. Accordingly, plaintiffs have failed to state an actionable claim for abuse of process.[22]

### e. Section 1983

Plaintiffs allege, under 42 U.S.C. § 1983, that "Macy's in-store civil recovery practices and the statutes that authorize them" violate the Fifth and Fourteenth Amendments of the Federal Constitution and Articles Six and Twelve of the New York State Constitution. PAC ¶ 95.

---

[22] Even assuming, _arguendo_, plaintiffs stated an otherwise actionable claim for abuse of process, Lema and Melgar's claims would still fail as time-barred. Under New York law, a cause of action for abuse of process is subject to a one-year statute of limitations, Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr., No. 12-CV-974 (KMK), 2015 WL 5729969, at *28 (S.D.N.Y. Sept. 30, 2015), which ordinarily "accrues at such time as the criminal process is set in motion—typically at arrest—against the plaintiff," Anderson v. County of Putnam, No. 14-CV-7162 (CS), 2016 WL 297737, at *3 (S.D.N.Y. Jan. 22, 2016) (quoting Duamutef v. Moris, 956 F. Supp. 1112, 1118 (S.D.N.Y. 1997)); see Pinter v. City of New York, 976 F. Supp. 2d 539, 570 (S.D.N.Y. 2013) ("[A]ccrual of a cause of action for abuse of process need not await the termination of an action in claimant's favor." (quoting Cunningham v. State, 53 N.Y.2d 851, 853, 422 N.E.2d 821 (1981))). Lema and Melgar were arrested, triggering the one-year statute of limitations, in December 2012 and October 2013, respectively. PAC ¶¶ 47, 51. Their claims, therefore, would be time-barred even if they related back to the July 2015 commencement of this litigation.

To state a claim under § 1983, "a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." Ciambriello v. County of Nassau, 292 F.3d 307, 323 (2d Cir. 2002) (citing Spear v. Town of West Hartford, 954 F.2d 63, 68 (2d Cir. 1992)). In order to establish that a private entity like Macy's acted "under color of state law," the "allegedly unconstitutional conduct must be 'fairly attributable to the state.'" Tancredi v. Metro. Life Ins. Co., 316 F.3d 308, 312 (2d Cir. 2003) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 51 (1999)). Ostensibly private conduct is, in turn, only "fairly attributable to the state" if "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Id. (internal quotation marks omitted) (quoting Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)).

"Generally, the acts of private security guards, hired by a store, do not constitute state action under § 1983." Prowisor v. Bon-Ton, Inc., 426 F. Supp. 2d 165, 170 (S.D.N.Y. 2006) (quoting Guiducci v. Kohl's Dep't Stores, 320 F. Supp. 2d 35, 37 (E.D.N.Y. 2004)), aff'd, 232 F. App'x 26 (2d Cir. 2007) (summary order). Indeed, security guards have only been found to act under color of state law in limited circumstances, such as when a security guard was deputized as a "special patrolman," see Rojas v. Alexander's

Dep't Store, Inc., 654 F. Supp. 856, 858 (E.D.N.Y. 1986), or where the store security guard and police officers acted in tandem, see Brooks v. Santiago, No. 93 Civ. 206(HB), 1998 WL 107110, at *4 (S.D.N.Y. Mar. 10, 1998). Plaintiffs, by contrast, merely allege that Macy's, after detaining plaintiffs on suspicion of shoplifting, called the police, with whom loss prevention employees provided a supporting deposition containing allegations of shoplifting, and that plaintiffs were arrested. Courts in this Circuit have repeatedly found similar allegations insufficient to establish the requisite nexus to state action.[23] See Prowisor, 426 F. Supp. 2d at 171; Guiducci, 320 F. Supp. 2d at 38; Newman v. Bloomingdale's, 543 F. Supp. 1029, 1032 (S.D.N.Y. 1982).

Plaintiffs argue that this case is distinguishable because Macy's acts are sanctioned by state law, viz., GBL § 218 and GOL § 11-105. Yet courts have routinely rejected that argument as well. See Guiducci, 320 F. Supp. 2d at 38 (Section 218 "is an

---

[23] The state court, in *dicta*, suggested a different conclusion in considering Orellana's motion for a preliminary injunction. See Orellana, 36 N.Y.S.3d at 554 ("It appears, and could be argued, that these private acts by Macy's are furthering the police objective to provide a basis to arrest these individuals and have them prosecuted."). This Court, however, is not bound by *dicta* from a court engaged in a preliminary proceeding. See Garten v. Hochman, No. 08 Civ. 9425(PGG), 2010 WL 2465479, at *3 n.1 (S.D.N.Y. June 16, 2010) ("[T]he law of the case doctrine is not typically applied in connection with preliminary determinations, such as a ruling on a motion for a preliminary injunction." (citing Goodheart Clothing Co. v. Laura Goodman Enters., Inc., 962 F.2d 268, 274 (2d Cir. 1992))); Russul Corp. v. Zim Am. Integrated Shipping Servs. Co., No. 06 Civ. 0037(JCF), 2009 WL 3247141, at *4 (S.D.N.Y. Oct. 5, 2009) ("[T]he law of the case doctrine does not apply to dicta, but only a prior court's rulings of law." (citing Arizona v. California, 460 U.S. 605, 618 (1983))).

affirmative defense against tort claims.  It in no way establishes store security guards as state actors."); Newman, 543 F. Supp. at 1031; Klein v. Alexander's Dep't Store, No. 75 Civ. 6024 (CHT), 1977 U.S. Dist. LEXIS 14673, at *3-4 (S.D.N.Y. Aug. 2, 1977); Estate of Iodice v. Gimbels, Inc., 416 F. Supp. 1054, 1055 (E.D.N.Y. 1976) ("The statute relied on is not sufficient to bridge the gap between private and State action. . . . This 'shopkeepers' privilege' is insufficient to transform defendants' conduct into acts under color of state law."); People v. Jones, 47 N.Y.2d 528, 532, 393 N.E.2d 443 (1979); cf. Moher v. Stop & Shop Cos., 580 F. Supp. 723, 724-25 (D. Conn. 1984); Battle v. Dayton-Hudson Corp., 399 F. Supp. 900 (D. Minn. 1975); Weyandt v. Mason's Stores, Inc., 279 F. Supp. 283 (W.D. Pa. 1968).

Finally, in their reply brief, plaintiffs point to a 2014 Assurance of Discontinuance ("AOD") into which Macy's entered with the Attorney General of the State of New York as evidence of state action.[24]  Pls.' Reply Mem. Law Supp. Mot. Leave Amend Class Action Compl. ("Pls.' Reply") 9; Compl. Ex. A.   An "[a]ssurance of [d]iscontinuance, like its federal counterpart, the consent

---

[24]  The AOD was attached to Orellana's initial class action complaint but not the proposed amended class action complaint.  See Compl. Ex. A.  Because exhibits attached to prior versions of a complaint may be considered on a motion to dismiss, we will consider the AOD for the purpose of determining the futility of the proposed amended class action complaint.  See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Wright v. Green Tree Servicing LLC, No. 1:14-cv-08493 (ALC), 2016 WL 4098404, at *1 n.1 (S.D.N.Y. July 25, 2016), aff'd, 685 F. App'x 67 (2d Cir. 2017) (summary order).

decree," is a "stipulation of settlement, which binds the parties" thereto. State ex rel. Abrams v. Solil Mgmt. Corp., 491 N.Y.S.2d 243, 247 (Sup. Ct.), aff'd, 114 A.D.2d 1057, 495 N.Y.S.2d 161 (Table) (1st Dep't 1985). The AOD followed an investigation, undertaken by the Attorney General, "to determine whether Macy's engaged in unlawful racial profiling of customers and prospective customers, in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a; 42 U.S.C. § 1981; New York Human Rights Law, N.Y. Exec. Law § 296; and New York Civil Rights Law § 40." Compl. Ex. A, at 4. Under the AOD, Macy's "agreed to implement certain procedural safeguards with respect to its detention policies and procedures," and was "to follow the procedures, instructions, and guidelines advised" by the New York Attorney General. Pls.' Reply 9. The AOD calls for a Security Monitor, designated by Macy's and approved by the Attorney General, to "conduct[] internal oversight of the loss prevention policies and practices for all Macy's stores located in the State of New York." Compl. Ex. A, at 6. Plaintiffs, by referencing the AOD, are presumably arguing that Macy's acted under color of state law because it was subject to state regulatory authority. This argument also fails.

First, plaintiffs do not cite any authority for the proposition that parties subject to an AOD act under color of state law with respect to the AOD's subject matter. Indeed, no such

authority appears to exist.  There is, however, authority in this District for the "well settled" proposition that the actions of a monitor appointed by a federal court "to oversee the implementation of a union consent decree do not constitute 'state action' for constitutional purposes."  United States v. Mason Tenders Dist. Council of Greater N.Y., No. 94 Civ. 6487(RWS), 1998 WL 23214, at *7 (S.D.N.Y. Jan. 13, 1998) (citing United States v. Int'l Bhd. of Teamsters, 981 F.2d 1362, 1371 (2d Cir. 1992)).  If the actions of a court appointed security monitor are not state action, then *a fortiori* neither are the actions of, as here, a monitor appointed by the monitored party.  And if the actions of the monitor appointed by the monitored party are not state action, then *a fortiori* neither are the actions of the monitored party itself.

Second, in order for the exercise of state regulatory authority to be sufficient for the regulated private party to have acted under color of state law, the state must have been involved "with the activity that caused the injury giving rise to the action."  Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008) (emphasis and internal quotation marks omitted) (quoting Schlein v. Millford Hosp., Inc., 561 F.2d 427, 428 (2d Cir. 1977)).  The clear and overwhelming focus of the AOD is curbing the use of racial profiling in detaining suspected shoplifters in the first instance.  The proposed amended class action complaint, by contrast, challenges the procedures used once

alleged shoplifters have been detained, and makes no assertion of racial profiling whatsoever.

### f. "Assault/Battery" and False Imprisonment

Plaintiffs' final causes of action are for "assault/battery" and false imprisonment.  <u>See</u> PAC ¶¶ 71-74, 89-92.  Plaintiffs allege that Macy's "engage[s] in the unlawful practice of confining, isolating, body-searching, handcuffing, jailing, and photographing Plaintiffs against their will in order to obtain confessions and on-the-spot payments from them."  <u>Id.</u> ¶ 72; <u>see id.</u> ¶ 90.

"To sustain a cause of action for damages for assault, there must be proof of physical conduct placing the plaintiff in imminent apprehension of harmful conduct."  <u>Doe v. Alsaud</u>, No. 13 Civ. 571 (RWS), 2016 WL 2689290, at *6 (S.D.N.Y. May 9, 2016) (quoting <u>Bastein v. Sotto</u>, 299 A.D.2d 432, 433, 749 N.Y.S.2d 538 (2d Dep't 2002)).  "A battery claim under New York State law requires proof 'that there was bodily contact, that the contact was offensive, and that the defendant intended to make the contact without the plaintiff's consent.'"  <u>Biswas v. City of New York</u>, 973 F. Supp. 2d 504, 530 (S.D.N.Y. 2013) (quoting <u>Bastein</u>, 299 A.D.2d at 433, 749 N.Y.S.2d 538)), <u>appeal dismissed</u>, 576 F. App'x 58 (2d Cir. 2014) (summary order).  Finally, to state a claim of false imprisonment, a plaintiff must plead "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement,

(3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Wright v. Musanti, 887 F.3d 577, 587 (2d Cir. 2018) (quoting Broughton v. State, 37 N.Y.2d 451, 456, 335 N.E.2d 310 (1975)).

Macy's does not challenge the legal sufficiency of plaintiffs' allegations, but instead argues that claims belonging to two of the plaintiffs, Lema and Melgar, are time-barred. See Def.'s Opp'n 24-25. Plaintiffs' only response is to incorrectly assert that it is improper to consider whether a claim is timely on a motion for leave to amend. Pls.' Reply 6 n.1; see Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000).

Under New York law, causes of action for assault, battery, and false imprisonment are subject to a one-year statute of limitations. N.Y. C.P.L.R. § 215(3). The statutes of limitations for assault and battery accrue at the time of the assault and battery, respectively, see Lettis v. U.S. Postal Serv., 39 F. Supp. 2d 181, 204 (E.D.N.Y. 1998), and for false imprisonment when the confinement terminates, see Harris v. Town of Islip Hous. Auth., 825 F. Supp. 2d 370, 375 (E.D.N.Y. 2011); Davis v. State, 89 A.D.3d 1287, 1287, 933 N.Y.S.2d 431 (3d Dep't 2011).

Lema and Melgar were detained and subsequently released in December 2012 and October 2013, respectively, at which point their claims for assault, battery, and false imprisonment accrued. PAC ¶¶ 47, 51. Thus, even if Lema and Melgar's claims related back to

the commencement of this litigation in July 2015, they would still be time-barred.

### III. Class Certification

Macy's argues that leave to amend should be denied to the extent plaintiffs assert class action claims. This is so, Macy's contends, because the class as currently defined could not be certified under Federal Rule of Civil Procedure 23. In particular, Macy's argues that plaintiffs could not establish commonality, Fed. R. Civ. P. 23(a)(2), typicality, Fed. R. Civ. P. 23(a)(3), or predominance, Fed. R. Civ. P. 23(b)(3). See Def.'s Opp'n 5-9.

"[I]nquiry into class action requirements on a motion to amend filed prior to a class certification motion is limited." Blagman v. Apple, Inc., 307 F.R.D. 107, 117 (S.D.N.Y. 2015) (internal quotation marks omitted). "Leave to amend should be denied for futility only where the proposed amendment would, on its face, violate class action requirements."[25] Blagman v. Apple, Inc., No. 12 Civ. 5453(ALC)(JCF), 2014 WL 2106489, at *6 (S.D.N.Y. May 19,

---

[25] In contrast, where "a plaintiff seeks to amend [his] complaint in order to cure deficiencies in [his] motion for class certification, the futility inquiry focuses on whether the amendments will enhance the likelihood of class certification, rather than on whether they state a claim." Oscar v. BMW of N. Am., LLC, No. 09 Civ. 11(PAE), 2011 WL 6399505, at *6 (S.D.N.Y. Dec. 20, 2011) (quoting Duling, 265 F.R.D. at 104), reconsideration denied, 2012 WL 245229 (S.D.N.Y. Jan. 25, 2015). If, after viewing the amendment in the light most favorable to the plaintiffs, "the court finds the proposed class cannot be certified under Rule 23, leave to amend will be denied." Id. (quoting Pierre v. JC Penney Co., No. 03-4782 JFB/WP, 2006 WL 407553, at *6 (E.D.N.Y. Feb. 21, 2006)).

2014) (quoting <u>Feldman v. Lifton</u>, 64 F.R.D. 539, 543 (S.D.N.Y. 1974)); <u>see</u> <u>Calibuso v. Bank of Am. Corp.</u>, 893 F. Supp. 2d 374, 386 (E.D.N.Y. 2012); <u>Acad. of Ambulatory Foot Surgery v. Am. Podiatry Ass'n</u>, 516 F. Supp. 378, 383 (S.D.N.Y. 1981).

The briefing on these issues is extremely underdeveloped. While plaintiffs filed a class certification motion in state court, the motion was never briefed. And while the class definition changed in the proposed amended class action complaint, it was not the thrust of the proposed amendments and, accordingly, did not receive significant treatment in either of the parties' briefing. Indeed, the relevant issues at class certification are quite difficult to brief where, as here, the lead plaintiffs and their clams are still in flux. <u>See</u> Letter from Meir Feder, Jones Day, to Hon. Naomi Reice Buchwald, United States District Judge, Southern District of New York at 1-2 (July 5, 2018) ("At present, the parties do not know what the operative complaint will be, and they cannot intelligently brief class certification without knowing what claims are being asserted, the allegations supporting those claims, or the identity of the named plaintiffs. . . . In short, the parties must know what the operative complaint is, what claims are being tried, and the scope of the proposed class before moving to class certification."), ECF No. 40. Thus, any ruling on plaintiffs' motion to amend their class claims would be a premature evaluation of plaintiffs' compliance with Rule 23's requirements.

However, even without full briefing it appears likely that plaintiffs will face significant challenges at the class certification stage.

First, the nature of Macy's oral (mis)representations, which form the basis of plaintiffs' fraud and GBL § 349 claims, vary significantly among the plaintiffs. Compare PAC ¶ 28 (Orellana "was told that she would be released as soon as [she] signed a paper admitting guilt and agreeing to pay Macy's a penalty equal to five times the price of the merchandise that was found on her."), with id. ¶ 48 (Melgar "was told that if he signed a paper which admitted to 'making a mistake,' and paid [Macy's] $500 with his Macy's credit card, he would be released, and that his money would eventually be refunded after his court appearance."), and id. ¶ 56 ("The Macy's security employee took the perfume away from [Ratner] and told her: 'It will be easier for you if you pay us $500 right now.'"). This poses a problem for plaintiffs in establishing predominance. "Where there are material variations in the nature of the misrepresentations made to each member of the proposed class, . . . class certification is improper because plaintiffs will need to submit proof of the statements made to each plaintiff, the nature of the varying material misrepresentations, and the reliance of each plaintiff upon those misrepresentations in order to sustain their claims." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1253 (2d Cir. 2002) (citing

Grainger v. State Sec. Life Ins. Co., 547 F.2d 303, 307 (5th Cir. 1977)).

Second, Macy's may be entitled to present individualized defenses to plaintiffs' claims which have survived, including GBL § 218 as a defense to false imprisonment and assault, and unclean hands as a defense to fraud.  See N.Y. Gen. Bus. Law § 218; In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 149 (2d Cir. 2001) ("The law is 'settled that affirmative defenses should be considered in making class certification decisions.'" (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000))), overruled on other grounds by In re Initial Pub. Offering Sec. Litig., 471 F.3d 24 (2d Cir. 2006); In re Dig. Music Antitrust Litig., 321 F.R.D. 64, 94-98 (S.D.N.Y. 2017) (denying class certification as, *inter alia*, existence of individualized unclean hands defense precluded satisfaction of predominance requirement); Weiss v. Mayflower Doughnut Corp., 1 N.Y.2d 310, 316, 135 N.E.2d 208 (1956) (New York law ordinarily permits an unclean hands defense only when plaintiffs' reprehensible conduct is "directly related to the subject matter in the litigation and the party seeking to invoke the doctrine was injured by such conduct.").

Finally, plaintiffs will face hurdles in establishing adequacy of representation, Fed. R. Civ. P. 23(a)(4), which requires inquiry into whether their "attorneys are qualified, experienced and able to conduct the litigation."  In re Flag

Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009)

(quoting Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222

F.3d 52, 60 (2d Cir. 2000)). Despite plaintiffs' assertion in the

proposed amended class action complaint that their existing

counsel, Faruk Usar, "is an experienced attorney who has

demonstrated his ability to protect the interests of the class,

through his skillful and energetic advocacy for the class in NY

State Supreme Court," PAC ¶ 25, his performance before this Court

has been to the contrary. Plaintiffs' opening memorandum of law

completely neglected to explain why leave to amend should not be

denied on the basis of futility. Their reply brief appears to

explain why: by repeatedly characterizing Macy's arguments that

the proposed claims were futile as "inappropriate" at this stage,

Mr. Usar demonstrated that he was unaware that futility is relevant

to, and potentially dispositive of, the leave to amend

determination. See Pls.' Reply 8 ("Here, the inclusion of the

G.B.L. § 349 claim in the proposed amended complaint should be

allowed, and any argument as to whether Defendant Macy's actions

are or are not 'consumer oriented' are inappropriate and should be

addressed in an answer or a motion."); see also Williams v.

Citigroup Inc., 659 F.3d 208, 214 (2d Cir. 2011) ("It is well

established that leave to amend need not be granted . . . where

the proposed amendment would be futile." (quoting Advanced

Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 18 (2d

Cir. 1997))). Further, to the extent Mr. Usar defended the merits of the proposed claims in the reply brief, many of his arguments were inapposite, poorly developed, and supported by sparse and non-controlling case law. It is appropriate to consider plaintiffs' counsel's performance in this case.[26] See Kulig v. Midland Funding, LLC, No. 13 Civ. 4715(PKC), 2014 WL 5017817, at *2 (S.D.N.Y. Sept. 26, 2014) ("[I]n determining the adequacy of counsel, the court looks beyond reputation built upon past practice and examines counsel's competence displayed by present performance." (quoting Bolanos v. Norwegian Cruise Lines Ltd., 212 F.R.D. 144, 156 (S.D.N.Y. 2002)), reconsideration denied, 2014 WL 6769741 (S.D.N.Y. Nov. 30, 2014).

## CONCLUSION

In summary, leave to amend is granted with respect to (1) Orellana, Moftah, Ramirez, Perullo, Melgar, and Lema's fraud claims, to the extent they allege that Macy's misrepresented that they would be released if they paid or agreed to pay civil fines and/or sign confessions to shoplifting; (2) Orellana, Moftah, Ramirez, Perullo, Melgar, and Ratner's GBL § 349 claims, to the extent they allege that Macy's engaged in a deceptive business practice by misrepresenting that they would be released if they

---

[26] The role of Mr. Usar's co-counsel, The Legal Aid Society, is allegedly limited to "monitor[ing] compliance with any relief that is obtained from the existing practice of in-store demands." PAC ¶ 24.

paid or agreed to pay civil fines and/or sign confessions to shoplifting; and (3) Orellana, Moftah, Ramirez, Perullo, Ratner, Hoque, Nahar, Acteopan, and Osongba's "assault/battery" and false imprisonment claims. Leave to amend is also granted to the extent all claims against Palmer are withdrawn. Plaintiffs' motion for leave to amend is denied with prejudice in all other respects. Plaintiffs' motion for leave to move to enforce the Supreme Court preliminary injunction, and for contempt sanctions in violation thereof, is denied without prejudice.

Plaintiffs shall file an amended class action complaint in accordance with, and within 14 days of, this Memorandum and Order. All counsel for extant parties shall thereafter appear for a status conference before this Court on August 2, 2018, in Courtroom 21A, 500 Pearl Street, New York, NY 10007, at 2:30 P.M.

The Clerk of Court is directed to (1) terminate Law Offices of Palmer, Reifler and Associates, P.A. as a defendant (and amend the case caption accordingly), and (2) terminate docket numbers 28 (granted in part and denied in part) and 38 (denied without prejudice).

Dated:   New York, New York
         July *10*, 2018

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

60

| | |
|---|---|
| <u>Counsel for plaintiffs</u>: | Faruk Usar |
| | Usar Law Group, P.C. |
| | |
| | Steven B. Wasserman |
| | The Legal Aid Society |
| | |
| <u>Counsel for defendant Macy's</u>: | Alison B. Marshall |
| | Meir Feder |
| | Jones Day |
| | |
| | Michael E. McDonagh |
| | Robert N. Dunn |
| | Lester Schwab Katz & Dwyer, LLP |
| | |
| <u>Counsel for defendant Palmer</u>: | Jerry D. Goldstein |
| | Jerry D. Goldstein, LLC |