UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CINTHIA CAROLINA REYES ORELLANA, SAMYA I MOFTAH, ANTHONY PERULLO, DEAN MELGAR, MARIA LEMA, ANN RATNER, DEYANIRA RAMIREZ, MOHAMMAD HOQUE, SHAMSUN NAHAR, MARGARITA ACTEOPAN, ATCHADE ASSONGBA, individually and on behalf of a class of all others similarly situated; <br><br>                                   Plaintiffs, <br><br> – against – <br><br> MACY'S RETAIL HOLDINGS, INC. d/b/a MACY'S f/k/a MACY'S EAST a/k/a MACY'S, INC., <br><br>                                   Defendant. | 1:17-cv-05192-NRB <br><br> **AMENDED CLASS ACTION COMPLAINT** |

<u>NATURE OF ACTION</u>

1. This action is brought against Macy's Retail Holdings ("Macy's") to end their practice in New York State of obtaining signed confessions and cash payments from suspected shoplifters while they are in their custody by employing coercive and/or fraudulent methods.

2. Macy's directs its "loss prevention" personnel to demand "in-store payments" of up to $500, in the form of cash or credit card debits, from shoplifting suspects whom they are holding for police. Macy's also coerces suspected shoplifters in their custody to sign confessions and execute promissory notes, by alternately threatening them with higher payments, or by falsely assuring them that if they sign a confession, they will be released or receive more lenient treatment in court.

1

3. Macy's acts under color of New York General Obligations Law §11-105 ("GOL §11-105"), which entitles retailers to "institute civil actions" against shoplifters, in combination with New York General Business Law §218 ("GBL § 218"), also known as the "Shopkeeper's Privilege," which permits retailers to detain suspected shoplifters "in a reasonable manner," and to question them as to the "ownership of merchandise." In practice, Macy's misuses the Shopkeeper's Privilege to extract payment of civil penalties.

4. To expedite civil penalty collection, Macy's has established "in-store jails" in their retail locations, complete with private search areas, handcuffs, and jail cells with adjoining desks. Their "loss prevention" employees (also referred to herein as "security employees") perform full-body searches, inspect the contents of the accused shoplifter's wallet, conduct interrogations, obtain signed confessions, and collect cash, debits, or promissory notes of up to $500, the maximum amount allowed as civil penalty for shoplifting.

5. Macy's "Civil Recovery" operation at their flagship Herald Square store was described in detail in a 2003 N.Y. Times article as taking place in Room 140, "a cool, halogen-lighted room containing two chain-link holding cells. People, some of them minors, are led to this room every day, where they are body-searched, photographed and then handcuffed to a long steel bench.  An interrogation occurs, and a verdict is made as to whether or not they tried to steal. Their Social Security numbers are punched into a national database, and they are turned over to the police or they are freed." Andrea Elliott, In Stores, Private Handcuffs for Sticky Fingers, N.Y. Times, June 17, 2003.

6. According to the same New York Times article, "[a]lmost all of them sign confessions and are asked to pay private penalties -- five times the amount of whatever they stole."

2

The article states that in 2002, "more than 12,000 people moved through detention rooms in 105 of Macy's stores, including more than 1,900 at the Manhattan store, in Herald Square. Only 56 percent of those people were sent to the police. The company, though, says that over 95 percent of those detained confess to shoplifting and quite a few pay the in-store penalty before leaving." Id.

7. GOL §11-105 paragraph 12 specifically makes "testimony or statements of [a] defendant […] or any evidence derived from an attempt to reach a civil settlement or from a civil proceeding brought" under the statute "*inadmissible in any other court proceeding relating to such larceny.*" (Emphasis added).

8. On June 27, 2016, a temporary injunction was issued against Macy's by the Supreme Court of New York County that presided over this action, before its removal to this court, barring in-store demands. Orellana v. Macy's Retail Holdings, Inc., 53 Misc.3d 622 (Sup. Ct. NY Co. 2016) (Mendez, J.). Judge Mendez ruled that in-store demands for payment and signed confessions are unauthorized under the New York's Civil Recovery Statute. Id.

9. The court found: "Macy's is acting way beyond the scope permitted for a private actor under GBL § 218 […] Macy's is not just taking the time to allow the suspected shoplifter to make or refuse to make a statement. It appears that Macy's is detaining, investigating, eliciting a confession and recovering civil penalties at the time the suspected shoplifter is in Macy's custody, and then instead of releasing the individual, continuing to detain them and pursue criminal punishment. This is not what is contemplated under the statute and these actions by Macy's, a private actor, go beyond what the legislature envisioned when it enacted GBL § 218 and GOL §11–105."

10. The court concluded that were a state to permit a private actor to collect a private debt in this manner, it would violate the rights of suspected shoplifters under the 4th and 14th Amendments to the U.S. Constitution. Id., at 629.

11. Macy's did not appeal the foregoing New York Supreme Court ruling.

12. In response to the ruling, Macy's communications director told a reporter for "The Guardian" that Macy's had ended their "in-store civil recovery" program in Fall 2015. Sarah Betancourt, [Macy's Banned from Detaining and Fining Alleged Shoplifter, Judge Rules](), The Guardian, July 1, 2016.

13. However, despite a declaration that they have abandoned the practice, it appears that Macy's persists in its efforts to recover civil penalties from accused shoplifters in their custody. Individuals in custody are still being required to execute signed confessions to shoplifting, and are being falsely warned that they will face additional penalties and severe consequences in the criminal proceedings if the civil penalties are not paid in full before their initial court appearances. See Plaintiffs Deyanira Ramirez, ¶¶ 38-42; Mohammad Hoque, ¶¶ 59-64, Shamsun Nahar, ¶¶ 59-64, and Margarita Acteopan, ¶¶ 65-67 infra.

JURISDICTION

14. Under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. 1367, this court has general and supplemental subject matter jurisdiction over this action.

VENUE

15. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 as the Defendant is subject to personal jurisdiction in this

district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

16. Defendant Macy's Retail Holdings, Inc. d/b/a Macy's f/k/a Macy's East a/k/a Macy's, Inc., (collectively "Macy's") was and still is a New York corporation organized and existing under the laws of the State of New York; with its principal place of business situated in the County of New York, City of New York, and the State of New York.

17. Defendant Macy's operates about 885 department stores nationwide, under the name of 'Macy's' and Bloomingdale's, including approximately 42 stores in New York State, and 8 of which are located in New York City.

18. At all times referred to in this complaint, the Plaintiffs listed below were suspected shoplifters who were pressured by Macy's to pay civil penalties while in their custody, either by cash, credit card debits, or promissory notes. The penalties were paid and the confessions were signed after Plaintiffs were either falsely promised that their compliance would result in their release from custody or in more lenient treatment in court, or falsely threatened with increased penalties. All of the Plaintiffs except for one were handed over to the police for arrest and prosecution.

## CLASS ACTION ALLEGATIONS

19. Plaintiffs bring this action on behalf of all persons who, while detained by Macy's at their New York department stores, have been or will be subjected to in-store demands for confessions to shoplifting, and demands to pay civil penalties.

20. The potential class is numerous: By Macy's own estimate, more than 12,000 people were detained on suspicion of shoplifting in 105 Macy's stores in 2002, more than 1900 in the

Herald Square store alone.  Elliott, NY Times, supra.  Defendant's estimate of potential class members comports with the estimate of the Legal Aid Society, which handles many shoplifting arrests in Herald Square and 7 other stores in New York City.

21.  Named Plaintiffs, who were arrested in various Macy's stores in New York City by various Macy's employees, were subjected to a uniform protocol that is typical of the class: Removal to an isolated secure area, a thorough search of their entire person and belongings, inspection of personal documents, confinement in a cell, followed by a demand for payment and a signed confession, - all accompanied by false assurances of release and leniency, - if Plaintiffs pay, sign, or promise to pay, or threats of higher payment if they do not pay promptly..  This protocol gives rise to common questions of law, and common questions of facts.

22. In a decision dated June 24, 2016, on a motion to dismiss submitted by Macy's, the New York Supreme Court ruled that Plaintiffs had sufficiently pleaded the numerosity, typicality and commonality required under CPLR § 901." Orellana v. Macy's Retail Holdings, Inc. et al., 2016 WL 3455939, (N.Y. Sup., June 24, 2016).

23. Potential class members already benefit from the temporary injunction issued by Justice Mendez, which this action seeks to make permanent. The entire class will benefit from the permanent declaratory and injunctive relief sought herein. Macy's has acted on grounds generally applicable to the class, thereby making appropriate injunctive relief with respect to the class as a whole.

24. Counsel will fairly and adequately protect the interests of the class. The Legal Aid Society has a substantial and ongoing interest in assuring the cessation of in-store demands, which affects hundreds of Legal Aid clients each year. As institutional defender

of most class members who are arrested in New York City, the Society is well situated to monitor compliance with any relief that is obtained from the existing practice of in-store demands.

25. Co-counsel Faruk Usar is an experienced attorney who has demonstrated his ability to protect the interests of the class, through his skillful and energetic advocacy for the class in NY State Supreme Court.

## THE NAMED PLAINTIFFS

26. CINTHIA C. REYES ORELLANA, age 29 at the time of the incident, is a native of Honduras with no criminal record. She was detained by Macy's loss prevention employee at the Herald Square store on July 18, 2014, shortly after she emerged from a dressing room holding a few items of clothing and rode an escalator to another floor. Macy's employee Luz J. Baez maintains that she was arrested as she was about to enter a bathroom.

27. Ms. Orellana was taken to the security area described in ¶ 4, where Macy's employees thoroughly searched her person and her pocket book. She was placed in a cell, questioned about the contents of her purse, the identification cards in her wallet, and her immigration status. She was forbidden from contacting friends or family.

28. She was told that she would be released as soon as signed a paper admitting guilt and agreeing to pay Macy's a penalty equal to five times the price of the merchandise that was found on her. She signed the paper agreeing to pay about $299.80, of which she was immediately charged $100 in cash.

29. She was not released however, but was turned over to police about 2 hours later, along with a supporting deposition prepared by Macy's loss prevention employee to expedite her prosecution.

30. She was issued a Desk Appearance ticket at the station house made returnable at the Midtown Community Court that August 5, 2014.

31. She pled "Not guilty" on Aug. 5, 2014, demanded a trial, and declined an offer by the prosecutor to adjourn the case in contemplation of dismissal. After she made six additional court appearances, the case was dismissed on speedy trial grounds.

32. SAMYAH I. MOFTAH, age 53 at the time of the incident, is a native of Egypt who was employed there as a school teacher. She is now an American citizen, married, a mother of three, and a grandmother of two. She wears a hijab. She has never been arrested.

33. Mrs. Moftah was stopped by Macy's loss prevention employee Brenda Howard as she was about to exit the Herald Square store on July 11, 2015. She had merchandise in her possession that she had previously purchased at Macy's. She had intended to exchange the merchandise for the same items in a different size. However, she decided to keep the previously purchased items and not exchange them.

34. Ms. Howard led Mrs. Moftah to the security area described in ¶ 4, where her purse was emptied and her physical person was thoroughly searched - under her clothing and in a manner that she experienced as deeply invasive and humiliating.

35. She was locked in a cell and presented with a standardized form confession for her signature. that was passed to her through a slot in the cell door. She signed, and her credit card was debited $500 - protesting her innocence at all times.

36. Despite assurances that she would be allowed to return home after she paid, she was turned over to police after about six hours in store custody, along with a supporting deposition prepared by Macy's loss prevention.

37. Mrs. Moftah was issued a Desk Appearance Ticket returnable on Aug. 12, 2015, at which time she was offered and refused an Adjournment in Contemplation of Dismissal. The criminal case was eventually dismissed and sealed on March 16, 2016.

38. DEYANIRA RAMIREZ, age 61 at the time of the incident, is US citizen of Colombian descent who has never been arrested. She speaks very limited English. She was detained on April 11, 2017 at Macy's Roosevelt Avenue store in Queens by Macy's loss prevention employee Aletha Epps on suspicion of exiting the store without paying for two chemises and two girl's dresses.

39. Ms. Ramirez was confined in a room within the Macy's store where she was searched, photographed, and ordered to sign some papers in order to be released.

40. At the same time, Ms. Ramirez was told by Ms. Epps that she owed $500 to Macy's and that she had to pay the full amount before making a court appearance or that otherwise the Judge would order her to pay three times as much.

41. After Ms. Ramirez signed the papers, she was turned over to police and charged with petit larceny.

42. The charges against Ms. Ramirez were adjourned in contemplation of dismissal on Sept. 15, 2017, and were dismissed on March 14, 2018.

43. ANTHONY J. PERULLO, age 50 at the time of the incident, is a veteran of the U.S. Navy with no criminal record. He was detained at Macy's Herald Square store on January

9, 2016 on suspicion of taking bags of T-shirts, socks and underwear that he did not intend to pay for.

44. He was locked in a cell in the security area described in ¶ 4, photographed, and searched. Everything he was carrying, including a Macy's credit card, was removed from his person.

45. Mr. Perullo was told by Macy's employee, Herschel Nurse, that he owed Macy's $500, and that he would be arrested unless he allowed Nurse to debit the entire sum from his Macy's card. However, Nurse's supervisor vetoed the proposal and Mr. Perullo was arrested.

46. The case against Mr. Perullo was Adjourned in Contemplation of Dismissal on February 5, 2017, and dismissed on August 5, 2017.

47. DEAN MELGAR, age 69 at the time of the incident, is a retiree with no criminal record who walks with a cane. He was detained at Macy's Ave. U location in Brooklyn in October 2013 on suspicion of possessing several neckties that he did not intend to pay for.

48. He was led to the security area despite vigorous protests that he did not intend to steal the neckties. He was told that if he signed a paper which admitted to "making a mistake," and paid Defendant $500 with his Macy's credit card, he would be released, and that his money would eventually be refunded after his court appearance.

49. After he paid Defendant $500 with his credit card, he was handcuffed, held for police, and issued a desk Appearance Ticket. The case was Adjourned in Contemplation of Dismissal on November 13, 2013, and dismissed on May 12, 2014 under Kings Co. Docket 2013KN082431. His money was not refunded.

50. Mr. Melgar maintains that he paid the $500 only because he was promised that he would be released, - not because he intended to steal the neckties.

51. MARIA LEMA, age 57 at the time of the incident, is a native of Ecuador, who was employed and working as a cleaner at Macy's Fulton Street Brooklyn location in the early morning hours of December 16, 2012, when she was taken into custody by Macy's security employee after being observed putting three small, inexpensive items, into her apron pocket.

52. After being placed in a cell, photographed, and fully searched, Ms. Lema was instructed by security manager Chance Linden, through a Spanish language interpreter, that she would be released if she signed a confession to stealing from Macy's; she agreed to allow her Macy's credit card to be debited $415 – five times the value of the merchandise.

53. After she signed the confession, she was told that she would be held for the police, despite her protests that she had been lied to.  Ms. Lema was particularly upset with Mr. Linden because she is diabetic, and needed to eat a meal when her work shift ended at 8 AM. She was subjected to a full-custody arrest and arraigned at 11 AM that morning.

54. At her arraignment, her prosecutor served a supporting deposition prepared and executed by Mr. Linden, and declared that the case was ready to proceed to trial.

55. ANN RATNER, age 68 at the time of incident, is a retiree who was taken into custody near the perfume counter at Macy's Herald Square on November 8, 2014, in possession of a small, costly bottle of perfume.

56. The Macy's security employee took the perfume away from her and told her: "It will be easier for you if you pay us $500 right now."

57. Ms. Ratner allowed the security employee to debit $500 from her bank debit card. She explains that she was frightened of being arrested and "didn't want to rock the boat."

58. She was held for the police, issued a Desk Appearance Ticket, arraigned on December 12, 2014 on Docket No. 2014CN010579, pled guilty to Disorderly Conduct and was sentenced to a Conditional Discharge.

59. MOHAMMAD HOQUE and his wife, SHAMSUN NAHAR, were arrested by Macy's security on January 15, 2017. While in custody they were both subjected to demands to sign confessions and to make $500 payments.

60. Macy's loss prevention employees Jose Cuello and Luz Baez allege that they observed the couple placing gloves and jewelry into shopping bags and attempting to leave the store without paying for them.

61. Mr Cuello escorted Mr. Hoque to the security area described in ¶ 4, where he was told that he must sign an agreement to send Macy's a $500 money order for the civil penalty.

62. Ms. Baez escorted Ms. Nahar to a different room inside the same security area described in ¶ 4, where she was also told that she must sign an agreement to pay a $500 penalty, and that the penalty would increase if it was not paid before her appearance in Criminal Court. Both Mr. Hoque and Ms. Nahar signed, and both were turned over to the police and arrested.

63. Mr. Hoque pled guilty to disorderly conduct on January 26, 2017, and was sentenced to a conditional discharge, a $120 fine, and community service.

64. On January 26, 2017, Ms. Nahar's case was Adjourned in Contemplation of Dismissal.

65. MARGARITA ACTEOPAN, age 36 at the time of the incident, is mother of three with no prior arrests and a limited command of English, was arrested on April 6, 2016 at the

Herald Square location by loss prevention employee Gillian Clyne while wearing a blouse and sweater she had tried on.

66. She was required to sign a paper in the store which she believed was an admission to shoplifting, and an agreement to pay a $500 penalty.

67. She was subsequently contacted at home by Macy's and reminded of the agreement she signed while in custody. She was told that if she did not pay Macy's $500, the amount would increase by $500 every week, and that if she didn't pay, they would come to her home and arrest her.

68. ATCHADE OSONGBA, age 50 at the time of the incident, was arrested at Macy's Herald Square on February 10, 2016 by loss prevention employee Herschel Nurse, in possession of a suit.

69. Mr. Nurse presented Mr. Osongba with a lengthy document for him to sign, and told him that if he signed he would be let go.

70. Mr. Osongbo, who does not read English well, declined to sign and he was arrested for shoplifting. The case was eventually ACD and dismissed.

## GROUNDS FOR RELIEF

### FIRST CAUSE OF ACTION
### (FALSE IMPRISONMENT)
### (All Plaintiffs except Dean Melgar and Maria Lema)

71. The allegations set forth in ¶¶ 1-70 are incorporated herein.

72. Macy's employees have engaged in the unlawful practice of confining, isolating, body-searching, handcuffing, jailing, and photographing Plaintiffs against their will in order to obtain confessions and on-the-spot payments from them.

73. Macy's is liable for their employees' unlawful and tortious conduct. Macy's management authorized, participated in, or ratified the unlawful and tortious conduct described in the preceding paragraphs. The pursuit of payments and confessions from suspects in custody on a criminal matter clearly perverts and abuses the general civilian authority to arrest and detain for an offense that is in fact committed in the civilian's presence.

74. Macy's cannot invoke, or forfeited, their Shopkeeper's Privilege, afforded to it by the GBL § 218.  As the NY Supreme Court found that actions by, "Macy's, a private actor, go beyond what the legislature envisioned when it enacted" GBL § 218 and GOL § 11-105 (Orellana, 53 Misc. 3d 622, at 630) – the shopkeepers privilege, only authorizes detention "in a reasonable manner" to allow the suspected shoplifter to make or refuse to make a statement. The manner and condition of Plaintiffs' detainment by Macy's were unreasonable as a matter of law. When they confined Plaintiffs against their will and simultaneously demanded confessions and payment of penalties from Plaintiffs, Macy's forfeited its Shopkeeper's Privilege as a matter of law.

SECOND CAUSE OF ACTION
(FRAUD)
(Plaintiffs Cinthia Carolina Reyes Orellana, Samya I. Moftah, Deyanira Ramirez, Anthony Perullo, Dean Melgar, and Maria Lema)

75. The allegations set forth in ¶¶ 1-74 are incorporated herein.

76. For many years, Macy's in-store payment demand policy resulted in the confinement of thousands of individuals like Plaintiffs, and the collection of millions of dollars in aggregate from such individuals based solely upon a mere allegation of shoplifting. As the New York Supreme Court found, Macy's had no authority to collect civil payments from accused individuals who were at the time under Macy's detention.

77. Macy's extorts civil penalties from suspected shoplifters by fraudulently simulating or assuming the role of law enforcement. Macy's employs all the trappings of police authority –threat of handcuffs, jail cells, full-body searches, as potent devices for bullying and frightening their detainees into paying them immediately, or before the initial court appearance, where they will have the benefit of counsel.

78. Macy's compounds the abuse of the criminal process by falsely promising to release its detainees if they pay or agree to pay civil penalties, and by falsely threatening them with increased penalties if they do not pay before they appear in court and have access to counsel.

79. These civil penalties were obtained wrongfully, and as such it is only just that Macy's return the moneys they collected from Plaintiffs and the prospective class members.

### THIRD CAUSE OF ACTION
(DECEPTIVE BUSINESS PRACTICES - NY GENERAL BUSINESS LAW "GBL" § 349)
(Plaintiffs Cinthia Carolina Reyes Orellana, Samya I. Moftah, Deyanira Ramirez, Anthony Perullo, Dean Melgar, and Ann Ratner)

80. The allegations set forth in ¶¶ 1-79 are incorporated herein.

81. Defendant's conduct directed towards Plaintiffs violated New York GBL §349 which prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York State.

82. Defendant engaged in one or more of the following deceptive acts and practices:

   a. Imprisoning alleged shoplifters for an unreasonable manner;

   b. Threatening and coercing alleged shoplifters into signing confessions and promissory notes;

   c. Demanding civil penalties from alleged shoplifters while they are under Defendant's detention;

83. As a result of Defendant's violations of the New York General Business Law, Plaintiffs have been damaged and are entitled to damages in accordance with the New York General Business Law § 349 in an amount to be determined at trial.

FOURTH CAUSE OF ACTION
(ASSAULT/BATTERY)
(All Plaintiffs except Dean Melgar and Maria Lema)

84. The allegations set forth in ¶¶ 1-83 are incorporated herein.

85. Defendant Macy's employees physically detained Plaintiffs and "accompanied" them to where they are confined under unreasonable conditions and against their will.

86. Confining Plaintiffs against their will and demanding from them civil payments under threat of prolonged detention and criminal prosecution constitute assault/battery.

87. Plaintiffs have been damaged as a result of Macy's wrongful, negligent, and illegal acts.

<u>PRAYER FOR RELIEF</u>

For the foregoing reasons, this Court should order:

I. A permanent injunction of in-store demands for immediate payments, signed confessions, and promissory notes from suspected shoplifters in Macy's custody in New York;

II. A refund of all moneys collected by Defendant Macy's from suspects in custody in New York, under color of NY GOL §11-105;

III. Money Damages to each Plaintiff that was subjected to in-store demands;

IV. Costs of this action, including reasonable attorneys' fees; and

V. Such other and further relief as this Court deems just, proper, and equitable.

## REQUEST FOR JURY TRIAL

Plaintiffs request a jury trial.

Dated: July 24, 2018
Queens, New York

                                          s/Faruk Usar

Attorneys for Plaintiffs and Putative Class
By: Faruk Usar, Esq.
USAR LAW GROUP, P.C.
43-01 48th Avenue
Woodside, NY 11377
Phone: 718 392 4447
Fax: 718 392 4448
Email: fusar@usarlaw.com


Steven Wasserman, Esq.
LEGAL AID SOCIETY
199 Water Street
New York, NY 10038
Phone (212) 577 3387
Fax (646) 616 4387
Email: swasserman@legal-aid.org